*In re* MARRIAGE OF STEVEN REX LOVEJOY, Petitioner-Appellee, and KAREN LEE LOVEJOY, n/k/a Karen Lee Walsh, Respondent-Appellant.

Third District   No. 3—86—0668

Opinion filed July 17, 1987.

2

James Patrick Murphy, of Flack, Kwacala, Murphy & Ashenhurst, of Macomb, for appellant.

Brian T. Morrow, of Westmont, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

The marriage of the petitioner, Steven Lovejoy (father), and the respondent, Karen Lovejoy (mother), was dissolved on June 4, 1982. At that time, the parties were granted joint custody of their minor child, Angela, who was 21 months old. The joint custody arrangement provided that the father have custody one week a month and 1½ months during the summer. On December 14, 1984, the father filed a petition seeking sole custody of Angela. The mother filed a response and counterpetition for sole custody. The case proceeded to

trial and both parties presented evidence adverse to each other and evidence that they were the proper person to have sole custody of Angela. After hearing all the evidence, the trial court awarded custody to the father. The mother appeals.

■■ The mother's first argument on appeal is that the trial judge erred in denying her motion for a directed verdict, at the close of the father's case-in-chief, on the ground that the father failed to meet the burden of proof required to terminate joint custody. The respondent relies on that part of the Illinois Marriage and Dissolution of Marriage Act which provided:

> "After the expiration of the 2 year period following a custody judgment specified in subsection (a) of this Section, the court shall not modify a prior custody judgment unless it finds by clear and convincing evidence, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian, or in the case of a joint custody arrangement that a change has occurred in the circumstances of the child or either or both parties having custody, and that the modification is necessary to serve the best interest of the child. In the case of joint custody, if the parties agree to a termination of a joint custody arrangement, the court shall so terminate the joint custody and make any modification which is in the child's best interest." (Ill. Rev. Stat. 1983, ch. 40, par. 610(b) (current version at Ill. Rev. Stat. 1985, ch. 40, par. 610(b)).)

The mother maintains that the father's evidence failed to establish a change in circumstances justifying the termination of the joint custody arrangement. The argument must fail. In the instant case, the mother filed a counterpetition seeking sole custody of Angela, thus agreeing to termination of the previous joint custody arrangement. Accordingly, the father was not required to show that a change in circumstances had occurred.

■ Even assuming that it was necessary to show a change in circumstances, such was clearly shown. The mother has moved so that the parties are now approximately 250 miles apart, and Angela has reached school age. These changes caused the joint custody arrangement to become a strain and burden on all involved and warranted modification.

■■ ■ The mother next contends that the trial court's decision to award custody of Angela to the father is against the manifest

weight of the evidence and an abuse of discretion. The determination of child custòdy rests largely within the broad discretion of the trial court, and its decision at trial will not be disturbed on appeal unless it is against the manifest weight of the evidence or unless the court has abused its discretion. (*In re Marriage of Siegel* (1984), 123 Ill. App. 3d 710.) The presumption favoring the result reached by the trial court is strong since it is in a better position to evaluate the credibility of the witnesses and the needs of the children. (123 Ill. App. 3d 710.) In making a custody determination, the court has a duty to consider all relevant factors, including:

"(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community;

(5) the mental and physical health of all individuals involved; and

(6) the physical violence or threat of physical violence by the child's potential custodian, whether directed against the child or directed against another person but witnessed by the child." Ill. Rev. Stat. 1985, ch. 40, par. 602(a).

Specifically, the respondent maintains that the court dismissed factor two, the wishes of Angela as to her custodian. During an *in camera* interview between the judge, the attorneys and Angela, the following conversation took place:

"Q. What do you like best the farm [father's home] or Glendale Heights [mother's home]?

A. Glendale Heights.

Q. You do?

A. That is where my puppy is.

\* \* \*

Q. Would you rather live with your mother or your father?

A. My mom.

\* \* \*

Q. If you could take your dog to the farm would you like to live on the farm?

A. No."

■ Although the child's preference should be given serious consideration in custody modification proceedings (*In re Marriage of*

*Batchelor* (1980), 89 Ill. App. 3d 781), the preference must be considered in light of the other five factors. The child's preference is not binding on the court and has to yield to the child's welfare. (*Filipello v. Filipello* (1971), 130 Ill. App. 2d 1089.) In the instant case, there were sufficient facts to support a determination that the child's preference had to yield to her welfare, which could be better provided for by the father.

As to the first factor, the wishes of the child's parents as to custody, and the fifth factor, the physical and mental health of all involved, it was apparent that both parents wished to have custody of the child and that both parents were physically and mentally fit to care for the child. In regard to the fourth factor, the child's adjustment to school, community, and home, it was shown that Angela was well-adjusted to her home in both places. Factor six concerned physical violence directed toward the child or someone in the child's presence. There was testimony concerning a single incident of physical violence on the part of the father toward the mother prior to the dissolution of marriage and in Angela's presence; however, it must have caused little concern since the parties subsequently agreed to joint custody of the child. We believe the crucial factor in this case was the third factor—the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest.

The mother has moved four times since the dissolution of marriage. She first moved to Macomb and worked at three different jobs while there. She then moved in with her sister and brother-in-law, Lorrie and Gilbert Henningson in Wheaton, Illinois, and remained unemployed for four months until taking an office job with a law firm. Gilbert testified on behalf of the father that during the time the mother lived in his house, Angela was being taken care of by the maternal grandparents, and not the mother. Gilbert further stated that the mother led the father to believe that Angela was in her care. The mother then temporarily moved to Atlanta, Georgia, to train as a flight attendant. From there, she moved to Downers Grove. She presently resides in Glendale Heights with her sister, Jenny, and is working as a flight attendant. During the time that the mother was moving and changing jobs, Angela was in her father's physical custody much more often than provided for in the joint custody agreement.

The mother's present job as a flight attendant requires her to take two- and three-day trips during each week, or prevents her from being home one or two nights a week. On these occasions,

Angela is entrusted to others, including an aunt, two uncles, grandparents and neighbors. These people are responsible for several aspects of Angela's life, including feeding, clothing, supervising and disciplining her, and seeing that she regularly and timely attends school. There was evidence, if believed by the trial court, that the environment at the grandparents' house is less than ideal, due to domestic disturbances and the abuse of alcohol. There was also expert testimony, if believed by the trial court, that a child needs a primary care giver, and that more than one or two care givers can lead to instability, confusion, anxiety and withdrawal. Additionally, though the mother remarried in March of 1985, she and her husband had not set up a family home at the time of the custody hearing; her husband was residing in Florida while she was residing in Glendale Heights.

■ On the other hand, the father, a farmer, has established a stable home environment. He has been in the same home since 1978, has remarried, and has a child by his second wife. Several people from the community, including a lawyer, a teacher and a homemaker, stated that the father, his wife, and children are a well-integrated family unit. The father and his wife are able to personally see that Angela gets to school and back each day. The father's work as a farmer and his wife's work as a homemaker do not require them to be away from the home overnight. Based on the evidence, it is our opinion that the court's award of custody to the father is not against the manifest weight of the evidence nor does it constitute an abuse of discretion. Accordingly, the judgment of the circuit court of McDonough County is affirmed.

Affirmed.

SCOTT and WOMBACHER, JJ., concur.