Mary M. THRONSON, Plaintiff and Appellant,

v.

Charles H. THRONSON, Defendant and Appellee.

No. 890547–CA.

Court of Appeals of Utah.

March 25, 1991.

Rehearing Denied May 21, 1991.

Paul H. Liapis (argued), Helen E. Christian, Kim M. Luhn, Gustin, Green, Stegall & Liapis, Salt Lake City, for plaintiff and appellant.

Clark W. Sessions (argued), Dean C. Andreasen, Campbell, Maack & Sessions, Salt Lake City, for defendant and appellee.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Mary Thronson appeals provisions of a divorce decree and separate order awarding joint legal custody of a child, child support, alimony, and property. We remand for further proceedings regarding child custody and support. We modify the alimony award and affirm the remainder of the decree.

### FACTS

The parties were married on September 30, 1978. Their marriage was the first for both. She was a full-time pharmacist and he a full-time attorney. A son was born to them on September 11, 1981. She became the child's primary caretaker and a part-time pharmacist. He became a shareholder in his law firm. She filed a complaint for divorce. He filed a counterclaim for divorce. They were divorced by a decree entered June 23, 1989. A separate order of joint legal custody was also entered. Further relevant facts will be set forth below in our treatment of the respective issues.

### CHILD CUSTODY AWARD

Ms. Thronson challenges the joint legal custody decree and order on two grounds: (1) She did not agree to the order of joint legal custody and Utah Code Ann. § 30-3-10.2 (1989) required the agreement of both parents at the time of this decree and order. (2) The provision for an automatic award of sole custody to one parent when the other moves from the state was error.

### CHILD CUSTODY IN UTAH

Prior to 1988, Utah did not have a statute expressly authorizing an award of "joint legal custody"[1] of a child. Our divorce statutes have contained various child custody provisions since 1903. For many years Utah Code Ann. § 30-3-5 (1989) has authorized district courts to include in divorce decrees "equitable orders relating to the children, property and parties." Further, Utah Code Ann. § 30-3-10 has contained various specific provisions regarding factors to be considered in awarding sole custody of a child. *See Lembach v. Cox*, 639 P.2d 197 (Utah 1981); 1 Utah L.Rev. 363 (1989) (historical development of child custody factors and preferences in Utah).

"Joint Legal Custody" was specifically added to the sole custody statute in 1988, and designated as § 30-3-10.1 to -10.4. We emphasize that this is a joint "legal" custody statute and not a joint "physical"

---

1. Custody terminology: Many legislators, judges and writers have been loose with their "joint" custody language. Early articles identified this vexing problem as follows:

    Both the forms of custody [sole, divided, split, joint] following divorce and the terms which describe them are vague and overlapping. The lack of standard definitions and the courts' tendency to use certain terms interchangeably have created confusion.

    Folberg & Graham, *Joint Custody of Children Following Divorce*, 12 U.C.Davis L.Rev. 523, 525 (1979).

    Often, when referring to one of these custody arrangements, courts use vague language or inadequately defined terms.

    Bratt, *Joint Custody*, 67 Ky.L.J. 271, 283 (1978-79).

    One author points out that considerable semantic confusion has resulted possibly because the "term" joint custody predates the "concept" of joint custody as it is known today. He states: "I have encountered at least fifteen terms used to refer to various alternatives to sole custody: joint legal custody, joint physical custody, divided custody, separate custody, alternating custody, split custody, managing conservatorship, possessory conservatorship, equal custody, shared custody, partial custody, custody 'given to neither party to the exclusion of the other,' temporary custody, shifting custody, and concurrent custody." Miller, *Joint Custody*, 13(3) Fam.L.Q. 345, 360 n. 79 (1979).

custody statute. In the 1988 Utah legislative session, Senator Hillyard stated: "This is not joint physical custody. The child obviously can't live in two homes. But it's joint legal custody which would give the non-custodial parent more involvement in the decisions of child raising." Floor Debate, (Feb. 3, 1988) Sen. Recording No. 42, side 2. In section 10.1 the legislature provided its definition of joint legal custody:

In this chapter, "joint legal custody"

(1) means the sharing of the rights, privileges, duties, and powers of a parent by both parents, where specified;

(2) may include an award of exclusive authority by the court to one parent to make specific decisions;

(3) does not affect the physical custody of the child except as specified in the order of joint legal custody;

(4) is not based on awarding equal or nearly equal periods of physical custody of and access to the child to each of the parents, as the best interest of the child often requires that a primary physical residence for the child be designated; and

(5) does not prohibit the court from specifying one parent as the primary caretaker and one home as the primary residence of the child.

Utah Code Ann. § 30–3–10.1 (1989). Subsections (1) and (2) define joint legal custody: both parents share the authority and responsibility to make basic decisions regarding their child's welfare. Subsections (3), (4) and (5) tell us what joint legal custody is not—it is not joint physical custody. We note that this statute does not contain a definition of nor a provision for "joint physical custody."

Subsection 10.2(1) created a "rebuttable presumption" that joint legal custody is in the best interest of a child. But, that presumption was made subject to subsection (2) which provided:

The court may order joint legal custody if it determines that:

(a) both parents agree to an order of joint legal custody;

(b) joint legal custody is in the best interest of the child; and

(c) both parents appear capable of implementing joint legal custody.

Utah Code Ann. § 30–3–10.2 (1989).

The order remains discretionary with the court, not mandatory, even when all three conditions are satisfied, i.e., (1) parental agreement, (2) best interests, and (3) parents capable of implementation. Further sections of the statute emphasize its "parental agreement" posture. We note that section 10.3—terms of joint legal custody order—contains two further subsections dealing with parental agreement:

(2) The court shall, where possible, include in the order the terms agreed to between the parties; ...

(5) The agreement may contain a dispute resolution procedure the parties agree to use....

Utah Code Ann. § 30–3–10.3 (1989). Moreover, the termination provisions, section 10.4, confer upon one parent the right to unilaterally terminate the order of joint legal custody. The order can be terminated simply by filing and serving a motion. Once the motion is filed, the court is required to replace the order "with an order of sole legal custody under Section 30–3–10." Utah Code Ann. § 30–3–10.4 (1989). This provision emphasizes the parental agreement stance of the statute as initially adopted and in force at the time of this divorce.

We return to section 10.2(3) to point out that the legislature created a list of factors the court *shall* consider in determining the best interest of a child in the context of joint legal custody (not joint physical custody). Those factors are:

(a) whether the physical, psychological, and emotional needs and development of the child will benefit from joint legal custody;

(b) the ability of the parents to give first priority to the welfare of the child and reach shared decisions in the child's best interest;

(c) whether each parent is capable of encouraging and accepting a positive relationship between the child and the other parent;

(d) whether both parents participated in raising the child before the filing of the suit;

(e) the geographical proximity of the homes of the parents;

(f) if the child is 12 years of age or older, any preference of the child for or against joint legal custody; and

(g) any other factors the court finds relevant.

Utah Code Ann. § 30–3–10.2(3) (1989). On the other hand, the legislature did not offer any guidance to trial courts to assist in determining the "capability" of the parents. The term is not defined. Section 10.4 contains provisions for (1) modification of a joint legal custody order, (2) termination of the order discussed above, and (3) attorney's fees based on frivolous pleadings and harassment. Utah Code Ann. § 30–3–10.4 (1989). The modification provisions appear to be a codification of the *Hogge v. Hogge*, 649 P.2d 51 (Utah 1982) bifurcated procedure used in sole custody modifications. Prior to adoption of this statute in 1988, the only reported Utah case dealing directly with an initial award of "joint custody" was *Lembach v. Cox, supra.* There, the court stated "a custody arrangement, joint or otherwise, is within the broad equitable powers of the court." Further, the court said "[t]he fact that the father and the mother could not negotiate a joint custody arrangement demonstrates the inappropriateness of ordering joint custody." 639 P.2d at 200.[2]

Prior to 1980, a handful of states including California had adopted various forms of "joint custody" statutes. During the 1980's "joint custody" was in vogue and a second wave of states adopted "joint custody" statutes. Utah became the thirty-second state (and apparently the last) caught up in this wave. 2 *Family Law and Practice*, § 32.04 (A. Rutkin ed. 1990 & Supp.) (hereinafter "Fam. Law").[3]

California, the acknowledged pioneer of no-fault divorce and joint custody, retrenched in 1988 regarding joint custody. California's 1979 statute contained a "presumption ... that joint custody is in the best interests of a minor child where the parents have agreed to an award of joint custody." Cal.Civ.Code § 4600.5(a) (West 1979). In 1983, California amended its joint custody statute to include a specific definition of both "physical" custody and "legal" custody. The California Legislature recognized the need to be more specific when in 1983 it defined *joint legal custody* to mean "both parents shall share the right and responsibility to make decisions relating to the health, education and welfare of the child," Cal.Civ.Code § 4600.5(d), and defined *joint physical custody* as "each of the parents ... [have] significant periods of physical custody." Cal.Civ.Code § 4600.5(d)(5) (West 1988). A team of Stanford professionals proposed the need

---

**2.** Other Utah reported cases involving joint custody are: *Moody v. Moody,* 715 P.2d 507 (Utah 1985) (modification hearing of an initial award of joint custody); *Becker v. Becker,* 694 P.2d 608 (Utah 1984) (on modification hearing, it was noted that trial court considered joint custody but did not order it in initial decree).

**3.** The child custody reform of the eighties gained impetus from ongoing no-fault divorce legislative reform. Utah added "irreconcilable differences" to its list of nine fault-based grounds in 1987. Utah Code Ann. § 30–3–1(3)(a) (1987). "Both reforms took place with no public commitment or private initiative for the systematic assessment of the legal changes on patterns of custody or on child welfare. As fashions change and new interest groups emerge, family law is at risk of becoming a series of experiments that never report results in ways that can help inform the legislative process." Zimring, *Foreword* to Sugarman & Kay, *Divorce Reform at the Crossroads,* at viii (1990). As no-fault made divorce virtually automatic, fathers' groups began to protest a pro-mother bias in child custody decisions. At the same time, feminist groups began attacking legal standards which were gender-specific as inherently discriminatory. Then, fathers' groups turned the idea of gender-neutrality to their advantage in the child custody arena. These opposing forces set the stage for "joint custody" statutes based on the rationale of "equality" rather than "equity" and children end up taking a back seat to the drivers, i.e., their divorcing parents. One writer succinctly summed up the result: "This modern trend illustrates a move backward toward the more explicit treatment of children as property—only this time the property is to be divided equally." Fineman, *Dominant Discourse, Professional Language, and Legal Change In Child Custody Decisionmaking,* 101 Harv.L.Rev. 727, 739–40 (1988).

to consider "joint custody" as having a third form—the actual residential arrangement for the child.[4] Later, a California Task Force recommended that existing joint custody provisions be clarified to indicate that no statutory presumption exists in favor of joint custody. In response, subsection (d) was added:

> This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody, but allows the courts and the family the widest discretion to choose a parenting plan which is in the best interests of the child or children.

Cal.Civ.Code § 4600(d) (West Supp.1989).

■ Coincidentally, while this appeal was pending, the 1990 Utah Legislature substantially amended its two year-old joint legal custody statute deleting the "rebuttable presumption" favoring joint legal custody. *See* Utah Code Ann. § 30–3–10.2 (1989 & Supp.1990). However, the legislature retained its initial definition of "joint legal custody," section 30–3–10.1, and the list of seven factors courts are required to consider in determining the best interests of the child in the context of joint legal custody. Section 30–3–10.2(3)(a–g). Also retained in the statute is some language regarding parental agreement: "The court shall, where possible, include in the order [joint legal custody order] the terms *agreed to between the parties* [parents]," § 30–3–10.3(2) (emphasis added), and, "The agreement may contain a dispute resolution procedure the parties *agree to use....*" § 30–3–10.3(5) (emphasis added). Utah Code Ann. § 30–3–10.3 (1989). Our legislature's change of position on the "rebuttable presumption" in favor of joint legal custody and the necessity of parental agreement creates confusion concerning the public policy basis for the joint legal custody statute. Utah and California appear to be the first and only states to retrench from a presumption in favor of joint (legal) custody after having adopted

the presumption. Due to the paucity of pre-statute and absence of post-statute joint custody reported decisions in Utah, plus the fact that Utah's statute is not like that of any other state, we are left to decide an issue of first impression with little useful precedent. Mr. Thronson argues that we should apply the 1990 version of the joint legal custody statute, i.e., apply the amendments retroactively. We decline to do so. The 1990 amendments did not make a mere procedural change or simply clarify how the 1988 statute should have been understood originally. The amendments were substantial and substantive, thus retroactive application is not appropriate. *See In re J.P.*, 648 P.2d 1364, 1369 n. 4 (Utah 1982).

### ANALYSIS OF JOINT LEGAL CUSTODY AWARD UNDER § 30–3–10.1 to –10.4

As noted above, the majority of states have adopted statutes expressly authorizing some form of "joint custody" award. Those statutes come in four basic forms:

1. joint custody as an option only where the parties petition or agree;

2. joint custody as an option;

3. joint custody as a presumption or preference;

4. joint custody split into joint legal custody and joint physical custody.

*Fam.Law*, § 32.06[2]. Initially, Utah combined forms 1 and 3. Now, Utah is form 2, but only as to joint "legal" custody. Here, the trial court faced Utah's initial statute with a favorable presumption on one hand and the requirement of parents' agreement on the other. Ms. Thronson opposed a joint custody order. The trial court failed to meet the parental agreement requirement head-on. Instead, the court found "there exists substantial difficulty between the parties" and "it is in the best interests of the child for the parties to be awarded *joint legal custody*." The court failed to

---

**4.** "There are actually three aspects of joint custody: the legal custody agreement, the physical custody agreement and the actual residential arrangement for the child. It is important to investigate the three forms of joint custody sepa-rately to understand the implications of each for the functioning of the post-divorce family." Albiston, Maccoby, & Mnookin, *Does Joint Legal Custody Matter?*, Stan.L. & Pol'y Rev. 167, 168 (1990).

find whether the parents agreed or disagreed as to an order of joint legal custody. At the time the court ruled, the statute stated:

> The court may order joint legal custody if it determines that:
>
> (a) both parents agree to an order of joint legal custody ... Utah Code Ann. § 30–3–10.2(2)(a) (1989).

The form of the statute required a threshold finding of parental "agreement." The trial court implicitly found "disagreement" but proceeded with the order. Moreover, the record reveals opposition to the order, i.e., no agreement. Several states have adopted the "parental agreement" form of joint custody statute, including Colorado, Texas and Kansas.[5] The Colorado statute, for example, requires that any motion for joint custody be filed by both parties, Colo.Rev.Stat. § 14–10–124(5) (1973), and that any plan for joint custody must be jointly agreed to by the parties, Colo.Rev.Stat. § 14–10–124.5(5) (1973). In Colorado, a trial court ordered joint custody over the objection of the mother. The appellate court ruled that the award in the absence of agreement of the parties was an abuse of discretion. *In re Marriage of Posinoff,* 683 P.2d 377, 378 (Colo.Ct.App. 1984). *See also Gonzalez v. Gonzalez,* 672 S.W.2d 887 (Tex.Ct.App.1984) (court has no authority to award joint custody without agreement); *Larsen v. Larsen,* 5 Kan. App.2d 284, 615 P.2d 806 (1980) (without agreement, joint custody award unauthorized).

■ We hold that the trial court abused its discretion by imposing the order of joint legal custody on the parents and child. The statute required parental agreement. Here, there was parental opposition. *See Lembach v. Cox,* 639 P.2d 197, 200 (Utah 1981) (inappropriate to order joint custody where parents not in agreement). Thus, we vacate the order of joint legal custody. Due to our ruling and remand, we need not reach Ms. Thronson's challenge to the provision for automatic change of custody when one parent moves from the state.

## ANALYSIS OF CHILD CUSTODY UNDER § 30–3–10

Our vacating of the order of joint legal custody is not necessarily dispositive of the issues of child custody, including legal custody, i.e., decision-making, and physical custody, i.e., caregiving and visitation rights. The trial court's findings might support a "best interests" custody award under § 30–3–10, although an award of joint legal custody was improper. However, both the court's memorandum decision and formal findings specify the court's reliance on the legislature's list of best interest factors in the joint legal custody statute § 30–3–10.2(3) enumerated above. On the other hand, § 30–3–10 provides:

> In determining custody, the court *shall* consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties.

Utah Code Ann. § 30–3–10 (1989) (emphasis added).

Our Supreme court has developed the best interest factors to be considered under this provision.

> We believe that the choice in competing child custody claims should instead be based on *function-related factors.* Prominent among these, though not exclusive, is the identity of the *primary caretaker* during the marriage. Other factors should include the identity of the parent with greater flexibility to provide personal care for the child and the identity of the parent with whom the child has spent most of his or her time pending custody determination if that period has been lengthy. Another important factor should be the stability of the environment provided by each parent.

*Pusey v. Pusey,* 728 P.2d 117, 120 (Utah 1986) (emphasis added). *See also Hutchison v. Hutchison,* 649 P.2d 38, 41 (Utah 1982); Rule 4–903(3) Utah Code of Jud.Ad-

---

5. Illinois, Massachusetts, Ohio, and Wisconsin have also adopted similar statutes. *Fam.Law* § 32.06[2] at n. 45.

min. (1989) (requiring custody evaluators to consider and respond to a list of factors).

■ Our comparison of the two lists of factors reveals that they are not identical, although some similarities appear. Moreover, the context of the respective factors point the thrust of the trial court's inquiry in two different directions. As a result, the findings herein will not support an ultimate finding under § 30–3–10 that child custody should be placed with one parent or the other. Further, the findings contain internal disagreement. The memorandum decision states "the court desires the parties to arrange between themselves for reasonable and liberal visitation which they determine." To the same effect is formal finding number 61: "[i]t is in the best interests of the parties and their minor child to attempt to arrange between themselves reasonable and liberal visitation.... If the parties are unable to do so, the court will set a specific schedule." But, the court in formal finding number 65 took that promised privilege away from the parties stating—"[i]n light of an appropriate reasonable and liberal visitation schedule, it is reasonable that the parties' minor child will spend 57% of his time with plaintiff, who has primary physical custody, and 43% of his time with the defendant." The "57%" visitation award to the mother provides the basis for the "primary physical custody" statement. This was the only time the trial court mentioned physical custody. This specification of visitation time surreptitiously imposed an award of joint physical custody upon the parties without proper consideration of the best interest factors under § 30–3–10. We hold the findings to be inadequate to support any award of child custody because:

(1) The trial court utilized best interest factors related to joint legal custody § 30–3–10.2(3) and not the factors related to child custody § 30–3–10;

(2) The findings are in conflict as to the determination of visitation rights, i.e., by the court or the parents;

(3) The findings do not support any award of physical custody; and

(4) Custody was awarded on the basis of a court imposed visitation time allocation.

Our task is to act in the best interests of the child. We must vacate and remand the custody and visitation award. We do not remand simply for revision of the findings or with directions to modify the decree regarding these matters. During the interim, the facts regarding the parents and their child and their relationships might have been dramatically changed. Further, the joint legal custody statute has been substantially amended. The current factual and legal circumstances should be examined before this matter is finalized. Thus, we remand for further fact finding and a new legal determination, utilizing whatever procedures and hearings the trial court deems necessary—consistent with this opinion.

## CHILD SUPPORT AWARD

■ Child support will have to be reconsidered in connection with the above remand. Utah Code Ann. § 78–45–7.4 (Supp. 1990) reveals that the support obligation is intended to be a shared obligation of both parents. This obligation must be allocated in proportion to the parties' adjusted gross income pursuant to Utah Code Ann. § 78–45–7.5 to –7.7. Subsection 7.5 lists the items of income to be included in gross income. It also lists two items to be subtracted from gross income to calculate adjusted gross income: alimony previously ordered and paid and child support previously ordered. Neither of those items is applicable here. Thus, gross income is the same as adjusted gross income in this case. But, the trial court failed to include income from nonearned sources as required by § 78–45–7.5(1)(a). Moreover, the trial court averaged Mr. Thronson's earned income for several years rather than using "current earnings." Section 78–45–7.5(5)(b) indicates that current earnings are to be used. On remand, child support calculations should properly account for these items pursuant to the statutory requirements.

## ALIMONY AWARD

The trial court awarded Ms. Thronson alimony of $800 per month for one year.

Three factors must be considered by the trial court in making an alimony award:

1. the financial condition and needs of the party seeking alimony;

2. that party's ability to produce sufficient income for him or herself; and

3. the ability of the other party to provide support.

*Naranjo v. Naranjo*, 751 P.2d 1144, 1147 (Utah Ct.App.1988) (citing *English v. English*, 565 P.2d 409, 410 (Utah 1977)).

"Failure to analyze the parties' circumstances in light of these three factors constitutes an abuse of discretion." *Id.* (citing *Paffel v. Paffel*, 732 P.2d 96, 100 (Utah 1986)). As long as the trial court exercises its discretion within the bounds and under the standards we have set and has supported its decision with adequate findings and conclusions, we will not disturb its rulings. *Davis v. Davis*, 749 P.2d 647, 649 (Utah 1988).

■ Here, the trial court considered each of the alimony factors and entered findings. Ms. Thronson's actual and necessary monthly living expenses were found to be $3,700. She presented a higher figure, but the court heard evidence challenging certain items and found them to be overstated. Ms. Thronson's current earning capacity, as a full-time pharmacist, was found to be $35,000 a year gross. This finding was based on competent evidence and represents the midpoint of an annual gross salary range of $31,000 to $39,000. The final factor, Mr. Thronson's ability to provide support, i.e., his earning capacity, was considered by the trial court. He submitted a thirteen-year summary of his income. The trial court used an average of the last eight years, after excluding some contingent fee income in three of those years. Thus, the court found Mr. Thronson's average gross income to be $71,376 annually. This calculation and finding was in error. Mr. Thronson's schedule showed his current gross earning capacity to be $94,476 annually. Nevertheless, we cannot say that an award of $800 per month in alimony is an abuse of discretion given the above factors and other financial circumstances of the parties. But, we do hold that the trial court abused its discretion in making the alimony nonpermanent, i.e., for one year.

The trial court found that "an annual income of $35,000 should be imputed" to Ms. Thronson, i.e., she could earn that amount, assuming she was employed on a full-time basis. But, the court found her needs to be $3,700 per month, i.e., $44,400 annually. Accordingly, she is not capable of meeting her needs, she requires $9,400 annually to meet her needs, even when employed on a full-time basis. Thus, she will require the $800 per month ($9,600 annually) alimony for the forseeable future. Otherwise, she will face a substantial income shortfall compared to her needs. Further, the trial court found Mr. Thronson's actual and necessary monthly living expenses to be $4,300 per month, i.e., $51,600 annually. This leaves him with some discretionary income. These findings warrant an award of permanent alimony. The trial court abused its discretion in limiting the alimony award to one year. *Rasband v. Rasband*, 752 P.2d 1331, 1335 (Utah Ct.App.1988). We remand for modification of the alimony award to be permanent alimony of $800 per month.

## OTHER FINANCIAL AND PROPERTY AWARDS

There is no fixed formula upon which to determine a division of property in a divorce action. The trial court has considerable latitude in adjusting financial and property interests, and its actions are entitled to a presumption of validity. *See Naranjo*, 751 P.2d at 1146. Ms. Thronson claims the trial court erred by failing to restore to her inheritance monies expended by her while the parties were separated prior to divorce; by failing to replace certain furniture removed by Mr. Thronson; and by failing to restore certain funds spent by Mr. Thronson after they separated. We have examined these items and find no abuse of trial court discretion. This court will not disturb a determination of financial and property interests unless it is clearly unjust or a clear abuse of discretion. *Rasband*, 752

P.2d at 1335. Thus, we affirm the rulings on these matters.

BENCH and GARFF, JJ., concur.