**Renae G. GURNEY, n/k/a Renae G. Tollman, Appellant (Defendant),**

v.

**Russell C. GURNEY, Appellee (Plaintiff).**

No. 94–144.

Supreme Court of Wyoming.

July 18, 1995.

Diane M. Lathrop of Wiederspahn, Lummis & Liepas, P.C., Cheyenne, for appellant.

James A. Eddington of Jones & Eddington Law Offices, Torrington, for appellee.

Before GOLDEN, C.J., and THOMAS, MACY, TAYLOR and LEHMAN, JJ.

GOLDEN, Chief Justice.

In this appeal, the primary issue we consider is whether it is necessary to demonstrate a substantial change in circumstances in order to modify an order of joint custody when both parents inform the district court that the joint custody arrangement has failed. Appellant Renae G. Gurney, now known as Renae G. Tollman (Renae), and appellee Russell C. Gurney (Russell) shared custody of their daughter (Laurie) following their divorce in July of 1993. Within fifty days after the divorce decree was filed, Russell petitioned for primary custody of the child. Following a stipulated informal hearing, the district court granted his petition and Renae now appeals.

We affirm.

## ISSUES

Renae presents the following issues:

I. Whether the court abused its discretion in finding a material change in circumstances, which is not supported by substantial evidence and is contrary to the manifest weight of the evidence presented.

II. Whether the court abused its discretion in finding that appellant's relocation was a material change in circumstance supporting a change of custody.

III. Whether the court abused its discretion by not considering the effect of separating siblings when determining the best interest of the child for purposes of changing custody.

IV. Whether the court abused its discretion by considering past relationships of appellant in granting custody of the minor child to appellee when the relationships had occurred prior to the entry of the original decree and had no present effect on the best interests of the minor child.

V. Whether the court abused its discretion by not considering that appellant was the primary care giver of the minor child.

Russell states the issue as follows:

Did the trial court abuse its discretion by granting primary custody of the parties' minor child to the appellee?

## FACTS

Russell and Renae were divorced on July 19, 1993. The divorce decree incorporated an agreement stipulating joint custody of their daughter, Laurie Jane Gurney, born January 22, 1992. Russell was granted primary custody for the six month period of April 1, 1993, through September 30, 1993, and Renae had primary custody from October through the end of March. Primary custody would continue to alternate every six months until the child attended school. The noncustodial parent had visitation rights.

At the time the parents agreed to their joint custody arrangement, both were living in Torrington, Wyoming. After the divorce decree was entered, Renae accepted a position in Lusk, Wyoming, a distance of about sixty miles from Torrington, and, in August 1993, moved to Lusk with Laurie and Laurie's stepsister, Jessie. On August 30, 1993, Russell petitioned the court to modify the joint custody arrangement and grant him primary custody, alleging Renae had failed to abide by the visitation set out in the divorce decree and a substantial change in circumstances had occurred warranting the change in custody.

Renae's response to Russell's petition denied a material change of circumstances had occurred and requested the modification be denied. However, she also counter petitioned for primary custody. In December of 1993, Renae requested a hearing on the matter because communication between the two had deteriorated and she no longer believed joint custody was in the best interest of the child. At the informal hearing, each parent presented evidence adverse to the other and evidence favorable to himself or herself, as the case may be, on the issue of primary custody of Laurie. Following the hearing, the court found a material change in circum-

stances warranted modification and the best interests of the child required that she reside in the place providing the greatest sense of security, consistency, and permanent relationships; consequently, the court awarded primary custody to Russell. This appeal followed.

## DISCUSSION

■ In these matters, we use an abuse of discretion standard in reviewing the decisions of the district court. *Love v. Love*, 851 P.2d 1283, 1286 (Wyo.1993) (quoting *Gaines v. Doby*, 794 P.2d 566, 570 (Wyo.1990) (citations omitted)).

Our analysis of the issues presented in the instant case is promoted if we recognize this case does not involve the usual custody dispute, in which the court earlier awarded custody to one parent and the other is now attempting to reopen the order and change custody, asserting a substantial change of circumstances as justification for the requested reopening of the custodial order. In countless primary custody cases we have adhered to the "substantial change of circumstances" test, but in past cases we have not had occasion to consider what should be re-

quired to justify the reopening of a joint custody order as contrasted with a primary custody order. In this case, the earlier order under consideration was one providing for joint custody[1], not one awarding primary custody to one of the parents. Recognizing that fact is of central importance in determining what should be required to justify reopening the order because we see several distinctive features between a primary custody order and a joint custody order. One such distinctive feature concerns child placement stability. An order awarding custody to one parent fixes that parent as the primary nurturer of the child and the one with whom the child shall reside. Once such an order is entered, considerations of stability in child placement become of central importance. In our case law, we have shown a strong bias against reopening the order because a child is almost always harmed by a transfer from one parent to the other.

When the reopening of a joint custody order is before the court, however, the stability-of-placement consideration that is central to our strict reopening standards in the primary custodial context appears to be of minimal importance because the joint custody order has not fixed one parent as the pri-

[1]. It is unclear from the district court's order if the "joint custody" ordered includes both physical and legal joint custody. It is important that judges, legislators, and writers clearly define what is meant by "joint custody" as the lack of a standard definition creates confusion. The case of *Thronson v. Thronson*, 810 P.2d 428 (Utah App.1991), *cert. denied*, 826 P.2d 651 (Utah 1991), discussed the problem:

> Custody Terminology: Many legislators, judges and writers have been loose with their "joint" custody language. Early articles identified this vexing problem as follows:
>
> > "Both the forms of custody [sole, divided, split, joint] following divorce and the terms which describe them are vague and overlapping. The lack of standard definitions and the courts' tendency to use certain terms interchangeably have created confusion."
>
> Folberg & Graham, *Joint Custody of Children Following Divorce*, 12 U.C. Davis L.Rev. 523, 525 (1979).
>
> > "Often, when referring to one of these custody arrangements, courts use vague language or inadequately defined terms."
>
> Bratt, *Joint Custody*, 67 Ky.L.J. 271, 283 (1978–79).
>
> One author points out that considerable semantic confusion has resulted possibly because the "term" joint custody predates the "con-

cept" of joint custody as it is known today. He states: "I have encountered at least fifteen terms used to refer to various alternatives to sole custody: joint legal custody, joint physical custody, divided custody, separate custody, alternating custody, split custody, managing conservatorship, possessory conservatorship, equal custody, shared custody, partial custody, custody 'given to neither party to the exclusion of the other,' temporary custody, shifting custody, and concurrent custody." Miller, *Joint Custody*, 13(3) Fam.L.Q. 345, 360 n. 79 (1979). *Thronson*, 810 P.2d at 429, fn. 1.

> As *Thronson* also noted, legal authorities consider that
>
> > "there are actually three aspects of joint custody: the legal custody agreement, the physical custody agreement and the actual residential arrangement for the child. It is important to investigate the three forms of joint custody separately to understand the implications of each for the functioning of the post-divorce family." Albiston, Maccoby, & Mnookin, *Does Joint Legal Custody Matter?*, Stan.L. & Pol'y Rev. 167, 168 (1990).

*Thronson*, 810 P.2d at 432, fn. 4.

mary nurturer. We recognize a measure of instability is inherent in a joint custody order because it requires two parents, who are not residing together, to share custodial rights and responsibilities and resolve the logistics of caring for the child. *Moody v. Moody,* 715 P.2d 507, 510 (Utah 1985) (J. Zimmerman concurring); *and see Keith v. Keith,* 429 N.W.2d 276, 279 (Minn.App.1988) (J. Huspeni, concurring); *In Re Marriage of Lovejoy,* 158 Ill.App.3d 1, 109 Ill.Dec. 768, 510 N.E.2d 636 (1987); *Blair v. Blair,* 34 Ohio App.3d 345, 518 N.E.2d 950 (1986).

■ A second distinctive feature suggests a joint custody order should be more readily opened. The premise of the joint custody order is the parents' ability to resolve between themselves the custodial details. There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard the security and stability vital to a child's best interest. When the parents are unable to make this cooperative arrangement work, a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated. *See Moody,* 715 P.2d at 510.

■ Here, both parties asserted joint custody was not working. Logically, such assertions end the judicial inquiry. *Gaines v. Doby,* 794 P.2d 566 (Wyo.1990). In *Gaines* we recognized a slight wrinkle in the "substantial change of circumstances" test for primary custody cases. There, we reviewed the custodial parent's challenge of the district court's modification of a visitation provision of the original divorce decree. The custodial parent contended changes of circumstances did not exist and, therefore, the district court's modification action was in error. Noting the trial court's possession of both statutory and inherent revisory powers with respect to custodial and visitation matters, as well as the possession of broad discretion in the exercise thereof, we considered it significant that both parents had expressly invited the district court to resolve the visitation modification issue. *Id.* at 569–71. We held neither party could claim error based upon such an invitation. *Id.* at 571. We held modification was warranted in light of the parties' invitation that the district court exer-

cise its revisory powers and in light of the demonstrated change of circumstances, *viz.,* the parties' inability to resolve visitation issues, and in light of the best interests of the child. *Id.*

Here, considering the brief span of time between the entry of the divorce decree and the parties' invitations to the district court to reopen the custodial issue, and considering the parties' express invitations to reopen, common sense dictates the district court should reopen the joint custody order and award custody to one parent or the other. Here, as in *Gaines,* each party invited the district court to do so. No error can be claimed because that court accepted and, at the parties' behest, acted upon the invitations. As Renae contends, her relocation to Lusk is not, in itself, a material change in circumstances. *Love,* 851 P.2d at 1288–89. However, the district court could have reasonably concluded that conditions resulting from the move contributed to the parties' inability to agree and communicate. There was not abuse of discretion in reopening the custody order.

■ With respect to the propriety of the district court's award of custody to the father, ample evidence supports that award. In custody decisions, the best interest of the child is the paramount consideration. *Love,* 851 P.2d at 1287. WYO.STAT. § 20–2–113(a) (1994). "The best-interest criterion of our law as the promise of our society should evoke every relevant factor, with the weighting to be vested in the discretion of the trial court." *Fanning v. Fanning,* 717 P.2d 346, 353 (Wyo.1986). In the record before us, sufficient evidence exists to show the district court took into account several relevant factors in determining the best interests of Laurie. The record indicates the district court took into consideration which parent had primarily cared for Laurie during the marriage and also the abilities of each parent to care for the child during the subsequent joint custody arrangement. The district court also considered the relationship Laurie shares with her step-sister, Jessie.

■ Contrary to Renae's contentions, the district court did not abuse its discretion by

taking into account her past romantic relationships, among other factors, in determining the best interests of the child. It was reasonable for the district court to consider those past relationships to understand the possible effect Renae's present romantic relationship could have on Laurie. We find no abuse of discretion.

## CONCLUSION

When joint custodians inform the district court the joint custody ordered by that court has failed, they present a sufficient change in circumstances justifying the reopening of the custody order and awarding of primary custody to one parent. Affirmed.

LEHMAN, Justice, concurring in result only, with whom TAYLOR, J., joins.

I do not agree that a court may take into consideration at a custody modification hearing romantic relationships occurring prior to the original custody agreement. I agree with the majority's resolution regarding the reopening of a joint custody decree when the parties ask the court to intervene, and concur with the result only because the record includes other sufficient evidence to support the trial court's custody decision.

When a district court signs a decree of divorce incorporating the parties' child custody stipulation, the district court makes a finding that the custody provision is in the best interests of the child. The trial court is not bound to accept a stipulation, but rather must consider independently what custody arrangement is in the child's best interest. *See Forbes v. Forbes*, 672 P.2d 428, 429 (Wyo. 1983). The findings are made in the context of all surrounding circumstances regarding the parties' lifestyles, parenting abilities and the well being of the child. When the court enters a decree awarding the parties joint custody, an assumption can be made that the court was even more thorough in its findings because joint custody presents many unique questions involving the best interests of the child. J.B. Singer & W.L. Reynolds, *A Dissent on Joint Custody*, 47 Md.L.Rev. 497 (1988) and E. Scott & A. Derdeyn, *Rethinking Joint Custody*, 45 Ohio St. L.J. 455 (1984).

Here the stipulation for joint custody included representations by the parties that sharing of custody was in the best interests of the child, and those representations were made by the parties with full knowledge of each other's history. A party, based on that representation, should be estopped from later arguing at a modification hearing that the other party should lose entitlement to joint custody because of premarriage and/or predivorce lifestyle. The determination at a modification of custody hearing to go back into time to revisit a party's predivorce, and in this instance premarriage, lifestyle seems obtrusive, especially where no connection was made depicting how the premarriage lifestyle relates to the present lifestyle or parenting abilities.