**Ronald SORENSEN, Appellant (Defendant),**

v.

**Sherri MAY, f/k/a Sherri Sorensen, Appellee (Plaintiff).**

No. 96-324.

Supreme Court of Wyoming.

Aug. 28, 1997.

Georg Jensen of Law Offices of Georg Jensen, Cheyenne, for Appellant.

Ronald E. Triggs of Law Offices of Ronald E. Triggs, PC, Cheyenne, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Ronald Sorensen (the father) appeals from the district court's order in favor of Appellee Sherri May (the mother) which denied his request to modify the parties' divorce decree with respect to custody of their minor children and child support.

We affirm.

## ISSUES

The father presents two issues on appeal:

1. Did the district court err in finding no substantial change of circumstances when there was an undisputed defacto change in custody of the minor children?

2. Did the district court err in failing to apply the child support guidelines when there was a substantial change of circumstances?

## FACTS

The parties were granted a divorce in December of 1993. The divorce decree provided for the parties to have joint custody of their two minor children with each party having physical custody of the children for six months out of every year. The parties' son was seventeen years old and their daughter was fourteen years old when the divorce decree was entered. According to the child

support guidelines, the mother was entitled to receive a presumptive monthly support payment of $88.89 from the father. Each party agreed, however, to waive the support payments from the other.

At the time of the divorce, the children were living with their father in Cheyenne and commuting to school in Albin. After the decree was entered, the father and the children moved to Albin so that the children would not have to commute to school. The children did not go to live with their mother, who lived in Cheyenne, after they had stayed six months with their father.

On February 2, 1995, the father filed a petition to modify the provisions of the divorce decree which pertained to custody of the minor children and child support. He contended that a substantial change of circumstances had occurred because the children did not spend one-half of the year with their mother as was contemplated by the divorce decree. The father prayed for permanent and physical custody of the children and for child support in accordance with the child support guidelines.

After numerous delays and continuances, the district court held a hearing on August 21, 1996, to consider the father's petition. Between the time that the divorce decree was entered and the time that the hearing was held, the son turned eighteen and graduated from high school. Consequently, the hearing focused primarily on the custody of the parties' daughter.

At the conclusion of the hearing, the district court found in pertinent part:

Well, it appears that the best interest of the children ha[s] been admirably served all along here. I don't see where it would be in their best interest to do any change, because thanks to the very mature and responsible way these two parents have acted vis-a-vis their daughter, it appears to me it wouldn't necessarily be in her best interest for any change of custody, nor would it be at any time because she was

enjoying a relationship with her father and her mother, which is one of the chief goals in any custody and visitation situation.

. . . .

. . . [I]t occurs to me that [the father] and [the mother] have acted in a very admirable and honorable fashion here, contrary to the situation that one sees in the District Court way too often. . . .

Here the parties very realistically and responsibly recognize that . . . the children w[ill] be attending school in Albin, as they were at the time of the divorce. And since it was their obvious preference to live in Albin rather than commute, I think that situation should be allowed to continue.

[The father] certainly gave notice when he filed this petition in February of . . . '95 that he was dissatisfied with that situation from only the point of view that he was not receiving contributions of support. The other side of it is that these parties mutually waived support at the time of the decree; they contemplated at the time that [the father] would be moving to Albin, which he did; that the children would be living there for that reason much of the time, which they did. Much to his credit, he never insisted that the children actually move.

The district court determined that a substantial change of circumstances did not occur and denied the father's petition to modify the divorce decree. This appeal followed.

## DISCUSSION

The father contends that the district court erred by ruling that he did not meet his burden of showing that a material or substantial change of circumstances occurred after the divorce decree was entered. The mother maintains that the district court did not abuse its discretion by refusing to modify the divorce decree.

■■■ The district court retains continuing jurisdiction to modify a divorce decree. W.S. 20-2-113(a) (amended 1997) [1]; *Rocha v.*

1. Prior to being amended in 1997, W.S. 20-2-113(a) provided in pertinent part:
 (a) . . . The court which entered the decree has continuing subject matter and personal

jurisdiction to enforce or revise the decree concerning the care, custody, visitation and maintenance of the children as the circum-

*Rocha,* 925 P.2d 231, 233 (Wyo.1996). "A district court's decision to modify a divorce decree is reviewed for [an] abuse of discretion." 925 P.2d at 233. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Martin v. State,* 720 P.2d 894, 897 (Wyo.1986). "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could [have] reasonably conclude[d] as it did." *Duffy v. State,* 730 P.2d 754, 757–58 (Wyo.1986).

 A party who is seeking to modify the child custody provisions of a divorce decree has the burden of showing that

a substantial or material change in circumstances which affects the child's welfare occurred subsequent to the entry of the initial decree, that the change warrants modification of the decree, and that the modification will be in the child's best interests.... In order to decide whether a showing of material or substantial change in circumstances has been made, we examine the record to determine whether the district court could [have] reasonably conclude[d] from the evidence that such a change occurred.

*Wilcox-Elliott v. Wilcox,* 924 P.2d 419, 421 (Wyo.1996). *See also Rocha,* 925 P.2d at 233. A condition which existed when the divorce decree was entered is not a substantial or material change of circumstances that warrants modification of the decree. *Crawford v. Crawford,* 828 P.2d 1192, 1193 (Wyo.1992). In *Gurney v. Gurney,* 899 P.2d 52, 54–55 (Wyo.1995), this Court recognized that, because parents must work closely together in joint custody arrangements, it may be easier to reopen a divorce decree which contains a joint custody provision. We decided that, because both parties agreed the joint custody situation was not working, the district court erred by not reopening the case. 899 P.2d at 55.

stances of the parents and the benefit of the

 At the time of the divorce in this case, the children were going to school in Albin. Both parties testified that they did not want the children to commute from Cheyenne to Albin. The father acknowledged that he was not sure when the divorce decree was entered whether "it [was] anticipated they would spend the other half of the year with their mother." Taking this evidence into account, the district court concluded that the parties had foreseen at the time of the divorce that they would not strictly adhere to the provision which declared that the children would spend six months out of every year with each parent. Even though they knew that the custody provision might not be followed exactly, the parties agreed to waive all child support obligations. Unlike in the *Gurney* case, the parties here did not agree that the joint custody arrangement was not working. In fact, the mother contested the father's request for a modification.

This Court stated in *Gurney:*

We recognize a measure of instability is inherent in a joint custody order because it requires two parents, who are not residing together, to share custodial rights and responsibilities and resolve the logistics of caring for the child.

... The premise of the joint custody order is the parents' ability to resolve between themselves the custodial details. There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard the security and stability vital to a child's best interest.

899 P.2d at 55 (citations omitted). Here, the district court commended the parties for working together in the best interests of their children. The parties agreed that it was best for the children to live in Albin since they went to school there. If the children had moved in with their mother after six months, they would have had to commute again. The district court, therefore, did not abuse its discretion when it concluded that the father did not satisfy his burden of proving that a material or substantial change of circumstances had occurred subsequent to

children require[ ].

the entry of the divorce decree. The flexibility of the joint custody arrangement allowed these parents to amicably work together to meet the children's needs. We expect the parties to continue to work together for the best interests of their children.

Affirmed.

LEHMAN, Justice, dissenting, with whom TAYLOR, Chief Justice, joins.

I respectfully dissent. The majority affirms the district court's application of an incorrect legal standard and rejection of undisputed facts which mandate a different result. By implication, both courts reach the unprecedented conclusion that failure to pay child support to a primary physical custodian is in the best interest of a child.

The parties entered into a stipulation, incorporated into an order, which awarded the parties joint custody of their children. Pursuant to the order, the children were to reside with each parent for six months of any given year and, because of that, no child support would be paid by either parent. It is undisputed that the parties did not share physical custody as contemplated by the order but, at some point, agreed it was best for the children to remain in Father's household year round. Based upon that obvious deviation from the joint custody arrangement, Father seeks a modification to reflect his permanent physical custody of the children and the payment of child support.

In *Gurney v. Gurney*, 899 P.2d 52 (Wyo. 1995), we discussed our adherence to the "substantial change of circumstances" test in traditional custody cases. We recognized that this standard is of central importance in circumstances where one parent has been designated as the primary nurturer because "a child is almost always harmed by a transfer from one parent to the other." *Gurney*, at 54. However, we rejected the traditional standard in true "joint custody" arrangements where the order has not fixed one parent as the primary custodian. First, we stated:

> When the reopening of a joint custody order is before the court, however, the stability-of-placement consideration that is central to our strict reopening standards in the primary custodial context appears to be of minimal importance because the joint custody order has not fixed one parent as the primary nurturer. We recognize a measure of instability is inherent in a joint custody order because it requires two parents, who are not residing together, to share custodial rights and responsibilities and resolve the logistics of caring for the child.

*Id.*, at 54–55. As a second distinguishing element, we noted that a cooperative arrangement is mandatory for the successful continuance of a joint custody arrangement. "When the parents are unable to make this cooperative arrangement work, a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated." *Id.*, at 55.

The district court in this case found that since the parties had cooperatively agreed to allow the children to reside permanently with Father and since both parties knew that the children would be in school in Albin at the time of the divorce, the court had no authority to "retroactively impose the obligation" of child support. This conclusion not only ignores the fact that Mother and Father did not "cooperatively agree" to a child support arrangement in light of the children's permanent residence with Father, but also fails to account for the "paramount consideration" in these proceedings—the best interests of the children. *Matter of Paternity of IC*, 941 P.2d 46, 51–52 (Wyo.1997); *Ready v. Ready*, 906 P.2d 382, 385 (Wyo.1995); *Jacobs v. Jacobs*, 895 P.2d 441, 443 (Wyo.1995); *Gurney*, at 55; *Roberts v. Roberts*, 816 P.2d 1293, 1293 (Wyo.1991); W.S. 20–2–113(a) (1997).

The majority affirms the district court's decision by stating: "Even though they knew that the custody provision might not be followed exactly, the parties agreed to waive all child support obligations." Maj. op. at 432. The majority implies this agreement because the children were attending school in Albin at the time of the divorce, the parents did not want the children commuting, and Father "acknowledged that he was not sure [at the time that] the divorce decree was entered whether 'it [was] anticipated they would

spend the other half of the year with their mother.'" *Id.*, at 432. The record reflects otherwise. The decree specifically states that the deviation from child support guidelines is based on the children residing six months with Mother and six months with Father. The parties both testified that they anticipated they would each have the children for six months of any given year. The implication that Father admitted that this arrangement was uncertain is particularly unwarranted; the majority takes out of context one statement made by Father at the modification hearing. The complete interchange regarding the waiver of support is as follows:

[Father's attorney] Q. Okay. At the time— Well, let me refer you to page 1. It says in the end of paragraph 3, subparagraph A, "The parties agree to waive child support from the other." Did you agree to that at the time?

[Father] A. At that time, yes.

Q. Okay. What was the reason that you agreed to that at that time?

A. Because of what it said, that the children were to spend six months with each parent.

Q. In fact, the sentence just before the one I pointed out to you specifically provides that the children will reside one half of the year with you and one half of the year with your former spouse; is that correct?

A. That's correct.

Q. Okay. This was entered in December of 1993. Where were the children living at that time?

A. They were living with me.

Q. Okay. And when was it anticipated they would spend the other half of the year with their mother?

A. I'm not sure about that.

Q. Were they attending school at that time?

A. Yes, they were.

Q. Did you both have the ability to have the children reside with you each half of the year?

A. I certainly did, and I assume that she did, also.

Q. Okay. This was something that—Let me change that question. Was this something that you both requested, or did one of you request of the other that the children be allowed to reside with each parent for half of the year?

A. It was drawn up in the decree and agreed upon there.

Q. Okay. So when you saw this decree and, as set out in paragraph 3, agreed to waive child support, you understood that this was going to be six months residence with the children with yourself and six months with their mother?

A. That was my understanding, yes.

Q. Did that ever actually happen?

A. No, it did not.

The most that can be inferred from this dialogue is that the parties did not ascertain at the time of the decree when the six-month increments would occur. Moreover, while nothing in the record indicates that the parties discussed whether the children would commute to school prior to the divorce, it is clear that the children did not reside with their mother even during summer months. Thus, a conclusion that Father waived child support in the event he became the primary physical custodian is not supported by the record. When a decree is entered ordering joint custody and without providing for support or a primary custodian, it represents that the parties will continue to cooperate in the best interests of the children. Such task requires the utmost in communication and accommodation, and we applaud those parents who are able to successfully accomplish this goal. However, in most instances, the uncertainties of the future render joint custody a court date continued; and when custody matters are again presented to the court by one of the parties, the only issue is the best interests of the children. This court has never found that failure to provide child support by a non-custodial parent is in the best interests of the children.

Mother attempts to distinguish the circumstances of this case from those presented in *Gurney* by pointing to the fact that she did not invite the court to reconsider the original order. No doubt Mother thinks the joint

custody is working perfectly. I speculate whether this rather hollow statement by a non-paying father would be met with the same acceptance as it was in this case. In any event, Mother clearly informed the court that the "joint custody ordered by that court has failed" when she admitted that it was in the best interests of the children to stay with Father rather than spend the six months ordered in her home. *See Gurney*, at 56. While the court's commendation to Mother for her recognition of this benefit to the children is certainly worth echoing here, it does not excuse her child support obligations. A non-custodial parent has an obligation to the child to contribute to the support of that child. *Smith v. Smith*, 895 P.2d 37, 42 (Wyo. 1995) (child support is a legal obligation parents owe to their children); *Cranston v. Cranston*, 879 P.2d 345, 349 (Wyo.1994) (child support is for the benefit of the children as a parent's obligation to contribute to their upbringing); *Matter of Adoption of GAR*, 810 P.2d 113, 115 (Wyo.1991) (common law duty to provide for maintenance of one's children); *Warren v. Hart*, 747 P.2d 511, 514 (Wyo.1987) (absence of decree provision providing for support does not eliminate intrinsic obligation); *Kamp v. Kamp*, 640 P.2d 48, 51 (Wyo.1982) (parents' obligation to support children is a continuing one); *Rose v. Rose*, 576 P.2d 458, 461 (Wyo.1978) (support is a basic obligation recognized even in absence of a statute). I find that there has undeniably been a change of circumstances sufficient to warrant a modification of the decree to reflect the uncontested fact that father is the primary physical custodian and that the best interests of the child should be recognized by an order for child support consistent with the statutory guidelines. Consequently, I would reverse and remand this case for consideration of the amount of child support owed by Mother since the date the petition for modification was filed.