2010 WY 115

Kari Jo ROEMMICH, Appellant (Defendant),

v.

Shane Christopher ROEMMICH, Appellee (Plaintiff).

No. S–10–0008.

Supreme Court of Wyoming.

Aug. 10, 2010.

Representing Appellant: Stacy E. Casper of Casper Law Office, LLC, Casper, Wyoming.

Representing Appellee: Nick Edward Beduhn of Goppert, Smith & Beduhn, Cody, Wyoming.

Before KITE, C.J., and GOLDEN, HILL, VOIGT *, and BURKE, JJ.

KITE, Chief Justice.

[¶1] When shared physical custody of their child failed, Kari Jo Roemmich (Mother) filed a petition for custody modification seeking primary physical custody of the child with reasonable visitation for Shane Christopher Roemmich (Father). After a hearing on the petition, the district court awarded Father primary physical custody with reasonable visitation by Mother and ordered Mother to pay child support. Mother appeals the district court's order raising a number of claims, including error in awarding custody to Father. We affirm the district court's custody determination, but remand for further proceedings on the issues of visitation and child support.

## ISSUES

[¶2] Mother asserts the district court committed error or abused its discretion in the following ways:

1. Granting custody to Father when he did not file a counter-petition for custody;

2. Failing to strike Father's witnesses and exhibits after he did not disclose them to Mother as agreed and in a timely fashion;

3. Granting custody to Father after a stalking protection order was entered against him;

4. Granting custody to Father on the basis of findings concerning Mother's employment that were contrary to the evidence;

5. Failing to order visitation in sufficient detail to promote understanding and compliance; and

6. Ordering child support with no evidence of the parties' incomes.

Father asserts the district court did not abuse its discretion in granting custody to him or figuring child support.

## FACTS

[¶3] Father and Mother were married on July 1, 2000, in Cody, Wyoming. In 2003, they had a child. They were divorced by decree entered in April of 2009. In accordance with the parties' agreement, the decree provided that Mother and Father would have joint legal care, custody and control of the child, with each parent having physical custody of the child for one week and visitation the following week.

[¶4] On June 15, 2009, Mother filed a petition for modification of custody in which she alleged that substantial changes in circumstances had occurred warranting modification of the decree, including that Father had berated and harassed her in front of the child, Father had been stalking her to the point that she had filed for a protective order and the shared physical custody arrangement was not in the child's best interest. Mother also filed a motion seeking temporary custody of the child pending a decision on her modification petition. The following day, on June 16, 2009, the district court set the temporary custody motion for hearing on June 19, 2009.

[¶5] On June 18, 2009, Father filed a motion to continue the temporary custody hearing, asserting insufficient time to prepare his case. The district court granted the motion and continued the hearing until July 10, 2009. On the day the hearing was to be held, Father filed a response to Mother's motion for temporary custody in which he alleged that no material change in circumstances had occurred since entry of the original decree and it was not in the child's best interest to award temporary custody to Mother. He also filed a response to Mother's custody modification petition in which he denied berating or harassing her in front of the child and denied stalking her but admitted the shared custody arrangement was not in the child's best interest.

[¶6] For reasons that do not appear in the record, no hearing was held on July 10, 2009. By order dated July 15, 2009, the district court rescheduled the temporary custody hearing for July 20, 2009. A hearing was held on July 20, however, the matter heard was Mother's petition for custody modification, not the temporary custody motion. After two days of testimony, the district

* Chief Justice at time of expedited conference.

court issued a decision letter in which it concluded it was in the child's best interest for Father to have primary physical custody. The district court entered an order to that effect and also ordered that Mother was to have visitation with the child every other weekend beginning August 28, 2009, and was to pay Father child support in the amount of $279.00 per month. Mother appealed from the district court's order.

## STANDARD OF REVIEW

[¶ 7] We review a district court's order on a petition to modify custody, visitation, and child support for an abuse of discretion. *Inman v. Williams*, 2009 WY 51, ¶ 9, 205 P.3d 185, 191 (Wyo.2009).

> We will not interfere with the district court's decision regarding modification of custody absent a procedural error or a clear abuse of discretion. In determining whether the district court has abused its discretion, we must decide whether it could reasonably conclude as it did. Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Id.*, quoting *Selvey v. Selvey*, 2004 WY 166, ¶ 15, 102 P.3d 210, 214 (Wyo.2004).

## DISCUSSION

### 1. Requirements for Modifying Joint Custody

[¶ 8] Mother asserts the district court abused its discretion in awarding primary physical custody of the child to Father when he did not file a pleading seeking custody but instead merely filed a response to her petition. She claims his response did not give her adequate notice that he was seeking custody. Father responds that once Mother filed a petition for modification alleging a material change in circumstances, the district court was required to determine what custodial arrangement was in the best interest of the child. Father contends the district court was required to make that determination regardless of the pleading he filed in response

to the petition. Father argues that because he agreed that the shared custody arrangement had failed, a material change in circumstances existed as a matter of law and the district court was left to decide which parent should have custody based upon the child's best interest.

[¶ 9] Mother filed her petition pursuant to Wyo. Ann. Stat. § 20-2-204 (LexisNexis 2009), which provides in pertinent part as follows:

§ 20-2-204. **Enforcement and modification.**

(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.

. . . .

(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).

[¶ 10] We construed this provision in *Gaines v. Doby*, 794 P.2d 566, 570 (Wyo. 1990), in the context of the parents' requests to modify visitation, child support and medical insurance provisions in the original divorce decree. Father filed a petition to modify the divorce decree to clarify his visitation rights, asserting that Mother had failed to allow reasonable visitation in accordance with the decree. Mother responded with a cross-petition to modify the child support and medical insurance provisions of the decree alleging that circumstances had changed in that she was no longer working. The district court modified the visitation provision and Mother appealed to this Court claiming the district court erred in doing so because Father had not shown a change in circumstances supporting the modification. We said:

> [T]he parties willingly presented and tried to the court the modification issues relating to visitation and medical insurance. Since the parties induced the district court to act by their motions to modify these provisions of the original divorce decree

and by their litigation posture at the hearing on the motions, neither of them can be heard on appeal to argue error based upon that action.

We determine that the district court could reasonably conclude from the evidence that the parties wanted it to exercise its revisory powers with respect to the visitation provisions and the medical insurance provision[.]

*Id.* at 571.

[¶ 11] Subsequently, in *Gurney v. Gurney,* 899 P.2d 52 (Wyo.1995), we addressed modification of custody in the context of a divorce decree providing for shared physical custody. Shortly after the decree was entered, Mother moved with the child to a nearby town. Father filed a petition for modification of the custody order, claiming Mother was not abiding by the visitation agreement and a substantial change of circumstances had occurred warranting an award of primary physical custody to him. In response, Mother denied a change of circumstances had occurred and requested that Father's petition be denied. She also counter-petitioned for an order awarding primary physical custody to her and requested a hearing on the ground that communication between the parties had deteriorated and shared physical custody was not working. Following the hearing, the district court found a material change in circumstances had occurred and the best interest of the child supported modifying the decree to award primary physical custody to Father.

[¶ 12] Mother appealed and we addressed the requirements for reopening a shared custody order. We concluded that when the parents are unable to make the shared physical custody arrangement work, "a change of circumstances justifying judicial reexamination of the original joint custody order is demonstrated." *Id.* at 55. We said:

[C]onsidering ... the parties' express invitations to reopen [the original custody order], common sense dictates the district court should reopen the joint custody order and award custody to one parent or the other. Here, as in *Gaines,* each party invited the district court to do so. No error can be claimed because that court

accepted and, at the parties' behest, acted upon the invitations.

*Id.* We have since reiterated the rule in Wyoming that when both parents inform the court that a joint physical custody arrangement is not working, a sufficient change in circumstances justifying the reopening of the custody order has been presented to the district court. *Harshberger v. Harshberger,* 2005 WY 99, ¶ 10, 117 P.3d 1244, 1249–1250 (Wyo.2005), citing *Gurney,* 899 P.2d at 55.

[¶ 13] Here, Mother petitioned the court for modification of the original custody order asserting that the child was "suffering from the current shared custody arrangement." Father filed a response in which he agreed that the child was suffering from the arrangement. Both parents having informed the district court that the shared custody arrangement was not working, the district court was presented with a sufficient change in circumstances justifying reconsideration of the original order. The parents presented a material change in circumstances by their agreement that shared physical custody was not working, and the district court was required pursuant to § 20–2–204(c) to determine what custody arrangement was in the child's best interest.

[¶ 14] Mother claims Father's response to her petition to modify custody did not provide adequate notice that the district court might award Father primary physical custody of the child. She contends that because Father did not file a counterclaim for primary custody, the district court was limited to deciding whether to continue the original shared custody arrangement or modifying the decree by awarding primary physical custody to her. She asserts the district court did not have discretion to award primary custody to Father because he did not request such an award by way of a counterclaim.

[¶ 15] As reflected in *Gurney,* the law has been established in Wyoming for fifteen years that when parents agree shared physical custody is not working, a district court is required to establish a custody arrangement that is in the child's best interest. Upon filing her petition for custody modifica-

tion, and receiving Father's response agreeing that shared custody was not in the child's best interest, Mother was on notice that the original custody arrangement would be reopened and a determination would be made as to what arrangement was in the best interest of the child. The district court was required to determine what arrangement was in the child's best interest, and was not limited to maintaining the status quo or awarding primary custody to Mother.

### 2. Witness and Exhibit Designations

[¶ 16] In her second issue, Mother contends the district court erred in not striking Father's designation of witnesses and exhibits when he filed them at noon on the first day of trial contrary to the discovery rules and the parties' agreement. She claims she was prejudiced because the late filing denied her the opportunity to interview Father's witnesses prior to the trial and prepare to respond to his evidence.

[¶ 17] The record reflects that Mother filed her witness and exhibit designations on July 16, 2009. She contends Father did not file his designations until halfway through the first day of trial on July 20, 2009. Mother asserts the parties had an agreement to exchange witness and exhibit designations by July 16, the Wednesday prior to trial. Because Father failed to comply with the agreement and the discovery rules, Mother contends the district court should have stricken Father's witnesses and exhibits pursuant to W.R.C.P. 37, which provides in pertinent part as follows:

**Rule 37. Failure to make disclosures or cooperate in discovery; sanctions.**

. . . .

(c) *Failure to disclose;*

(1) A party that without substantial justification fails to disclose information as required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at trial ... any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

[¶ 18] Father contends there was no firm agreement concerning disclosure and he did not violate the discovery rules. He points to the following provision in W.R.C.P. 26(a)(1.1) governing disclosure in divorce actions: "[D]isclosures in divorce actions must be made within 30 days after the defendant is served unless a different time is set by stipulation in writing or by court order." He contends the thirty day time limit did not apply because he did not have thirty days between service of the petition and trial and no other time for disclosure was set by written stipulation or court order. Even if there had been a time set for disclosure, he asserts sanctions are appropriate under Rule 37 only when a party fails "without substantial justification" to disclose information as required. He asserts he demonstrated substantial justification by his attorney's representations to the district court that he was out of town or in court the week before trial. He also contends that he attempted to fax his designations to Mother on the Friday before trial and an equipment failure beyond his control intervened.

[¶ 19] W.R.C.P. 26 provides in relevant part:

(a) *Required disclosures;*

. . . .

(1.1) Initial disclosures in divorce actions. In divorce actions the following initial disclosures are required ... in post-decree proceedings to the extent that they pertain to a particular claim or defense:

. . . .

(H) A party seeking custody or a change in custody shall set forth the facts believed to support the claim of superior entitlement to custody. In addition, as to a change of custody the party shall set forth any facts comprising a substantial change in circumstances and disclose any supporting documentation.

These disclosures in divorce actions must be made within 30 days after the defendant is served unless a different time is set by stipulation in writing or by court order. A party must make its disclosures based on the information

then reasonably available to it and is not excused from making its disclosures because it has not fully completed its investigation of the case or because it challenges the sufficiency of another party' disclosures or because another party has not made its disclosures.

[¶ 20] Pursuant to this provision, Father was required to disclose any facts supporting his belief that joint custody was not working and, if he intended to seek primary physical custody, the facts supporting such an award. The rule required him to make the disclosure within thirty days of service of the custody modification petition unless a different time was set by written stipulation or court order. The record contains no written stipulation or court order setting a time for disclosure. Father was served with the petition on June 15, 2009, meaning he was required to make his disclosure on July 15, 2009. His contention that there were not thirty days between service and trial is, therefore, incorrect. Father does not dispute that he failed to make his disclosure on July 15. Pursuant to W.R.C.P. 37(c), the district court had the discretion to refuse to allow him to present his evidence or impose other appropriate sanctions.

[¶ 21] After hearing the parties' arguments on Mother's motion to exclude Father's evidence, the district court determined that it was in the child's best interest to allow Father to present his evidence. In its ruling, the district court acknowledged that allowing presentation of the evidence would be "somewhat prejudicial" to Mother and admonished Father's attorney to "do better" in the future.

[¶ 22] While we do not condone Father's failure to comply with the discovery rules, our review of the district court's ruling is limited. A "district court must generally be afforded broad discretion, both in the mechanisms adopted to control discovery and in its selection of appropriate sanctions for violations of … discovery…." *Ruwart v. Wagner*, 880 P.2d 586, 592 (Wyo.1994). A court does not abuse its discretion if it reasonably could have concluded as it did. We do not find unreasonable the district court's conclusion that the best interest of the child

favored allowing Father to present his evidence.

### 3. Stalking Protection Order

[¶ 23] Mother asserts the district court abused its discretion in awarding primary physical custody to Father when he was the subject of a stalking protection order. Spousal abuse is contrary to a child's best interest; therefore, she maintains, the district court's order must be reversed. Father contends the issue of spousal abuse was only one factor the district court was required to consider and the district court properly considered all of the factors set forth in § 20–2–201 in arriving at its decision. Father also asserts witness credibility determinations are properly left to the district court and after hearing the witness testimony the district court chose not to make a finding that spousal abuse occurred.

[¶ 24] The best interest of the child are paramount in child custody determinations. *Parris v. Parris*, 2009 WY 44, ¶ 18, 204 P.3d 298, 304 (Wyo.2009). Upon a showing in a custody modification proceeding that a material change of circumstances has occurred, it must be shown that modification of custody is in the best interest of the child. *Durfee v. Durfee*, 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo.2009). In determining the best interest of the child, the court is required pursuant to § 20–2–201 to consider the following factors:

(i) The quality of the relationship each child has with each parent;

(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;

(iii) The relative competency and fitness of each parent;

(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;

(v) How the parents and each child can best maintain and strengthen a relationship with each other;

(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;

(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;

(viii) Geographic distance between the parents' residences;

(ix) The current physical and mental ability of each parent to care for each child;

(x) Any other factors the court deems necessary and relevant.

In addition, § 20–2–201 provides:

(c) The court shall consider evidence of spousal abuse or child abuse as being contrary to the best interest of the children. If the court finds that family violence has occurred, the court shall make arrangements for visitation that best protects the children and the abused spouse from further harm.

[¶ 25] In support of her claim that spousal abuse occurred, Mother testified that on one occasion in early April shortly after the divorce, Father wanted to talk to her as she was giving the child a bath and getting him ready for bed. She testified that she told Father she did not want to talk with him then; he followed her around the house until she went into the bedroom and slammed the door; he pushed the door open; she got her cell phone and he grabbed it from her; she went into the child's room to get the house phone and Father tackled her on the bed, took the phone and removed the batteries. Mother testified she then went into the bathroom to get the child and Father proceeded to tell the child, "Your mom is a lying, cheating whore. She's a liar. Her family is a bunch of liars. And all this is her fault."

[¶ 26] Mother testified that a few weeks later, on May 1, 2009, Father called her on her cell phone and said, "We need to talk . . . to prove what a lying, cheating whore you are." Mother testified he continued to call her names, she hung up, he repeatedly called her back, and she called the police to ask

what she could do to stop him. She testified that as she was speaking with a police officer, Father continued to call and text her, and did so "every minute for two hours." Mother testified that Father waited for her outside her school that day and called her when she was not there as he expected her to be. He continued to call and text even after being told by a law enforcement officer not to contact her. Mother testified Father told her she could not have the child the following Sunday unless she came into his house when she came to pick him up and listened to something Father had to tell her. She again called the police and a police officer offered to park nearby while she picked up the child. Mother told Father an officer was going to come with her. When she arrived to pick up the child, Father asked her where her "f—ing body guard" was?

[¶ 27] Mother testified that on May 6, 2009, she went to her storage shed and Father unexpectedly showed up with the child. Father proceeded to take things out of her storage shed and put them in his vehicle. He got into her car and rifled through items in it. He took her car keys, she threatened to call the police and he threw the keys back into her car. Mother testified that after this incident, Father continued to call and text Mother repeatedly. He brought the child to the birthday party Mother was having for the child on May 30, 2009, and followed her around, getting in her face and bullying her.

[¶ 28] Father confirmed that a protection order was entered against him prohibiting him from having any contact with Mother for ninety days. He also confirmed the protective order was placed against him for numerous text messages and phone calls he made to Mother in which he made threatening statements. He admitted he sent a text to Mother on May 1, 2009, stating to the effect, "You are so full of sh—. I cannot wait until the day comes when I get to share with your son who you really were." He also admitted sending a text to Mother stating, "[E]veryone knows you are a crazy bitch." Father also admitted taking items from Mother's car without her permission although he testified the items belonged to him and he and Mother jointly owned the car. He further admit-

ted to taking the phone away from Mother to prevent her from calling the police during the fight when Mother was giving the child a bath. He also admitted pushing Mother but testified he did so because she was hitting him.

[¶ 29] Father testified that both parties engaged in taking "pot shots" at each other. He testified that many times he contacted Mother about financial matters that needed to be resolved after the divorce. He testified that he asked Mother to come into the house when she picked up the child in order to get her signature on some papers. He denied Mother's account of the confrontation at the storage shed, stating that she jumped on his back and started scratching him when he was removing some of his tools from the shed and she then jumped in her car and took off, squealing the tires as she drove away. He testified that he did not get into her car or take her phone or her keys.

[¶ 30] It is clear from the decision letter that the district court considered the evidence both parties presented on the issue of spousal abuse. The district court summarized the testimony of three law enforcement officers Mother called as witnesses about their involvement with her complaints and concerns about Father's behavior. The district court also summarized Mother's and Father's testimony about the events in the house while the child was taking a bath and at the storage unit and specifically noted that Mother's testimony was inconsistent with Father's testimony. Beyond summarizing the testimony, however, the district court made no finding on the issue of spousal abuse and does not appear to have weighed it as a factor in determining the child's best interest.

[¶ 31] It would have been helpful if the district court had made express findings about the spousal abuse allegations. However, considering all of the evidence and the district court's statements in their entirety, we cannot say the district court abused its discretion in declining to base its custody determination on the evidence of spousal abuse. While there is no question from the evidence that Father harassed Mother by cell phone and that the parties fought on two

occasions in the presence of the child contrary to his best interest, we conclude the district court reasonably could have determined from the totality of the evidence that the admitted harassment and alleged abuse was not sufficient to override the other factors it was required to consider in determining custody. It is clear from the district court's decision letter that it considered and weighed each of the factors set out in § 20–2–201. Additionally, as we have said many times, the district court is in the best position to assess witness credibility and weigh testimony and is therefore in a better position than this Court to judge the respective merits of the parties' claims. *Pond v. Pond,* 2009 WY 134, ¶ 9, 218 P.3d 650, 652 (Wyo. 2009). From the evidence presented, we conclude the district court did not abuse its discretion in declining to award primary custody to Mother on the basis of her spousal abuse claim.

### 4. *Findings Contrary to the Evidence*

[¶ 32] Mother contends that in awarding custody to Father the district court assumed she would continue to work nights which was contrary to her trial testimony that she would work days at her new job. Father responds that the district court based its decision on all of the factors set forth in § 20–2–201, not just Mother's employment; therefore, whether or not it made an incorrect assumption about where and when Mother was working, the district court did not abuse its discretion in awarding primary custody to Father.

[¶ 33] Mother testified at the hearing that she had been accepted into nursing school, and would continue to work during the two years it would take her to complete the nursing program. She testified, however, that she would not continue to work at her current job, but would be working as a certified nurse's assistant during the day while the child was in school. In its decision letter, in considering § 20–2–201(a)(v)—how the parents and the child can best maintain and strengthen a relationship with each other, the district court made the following findings:

[Father] proposed having [child] attend Sunset School where he teaches third grade. [Child] would go to school and leave school with his father. He would be with his father after school. [Mother] is pursuing a nursing degree with a combination of real classes and online study. Real time is between 10:00 a.m. and noon during the weekdays, *and the Court assumes her employment at Wyoming's Rib and Chop House would continue with some evening hours.* The Court finds [Father's] schedule to accommodate this factor and thus finds in his favor.

(Emphasis added).

[¶ 34] The district court made the following finding with regard to § 20–2–201(a)(x)— other factors the court deems necessary and relevant:

[Father] had several witnesses who worked at Sunset School, including his principal and two other co-employees. It is apparent [Father] is a fine teacher and respected by others. [Father] testified he used skills learned as a teacher to help with parenting. [Father] is stable in his profession, and [Mother] is seeking to become a nurse after having worked in a bank and *working in a restaurant.* The court applauds her effort to become a nurse, however, believes [Father's] position will provide more stability and consistency for [child]. This factor favors [Father.]

(Emphasis added).

[¶ 35] The district court's decision letter confirms Mother's contention that it incorrectly assumed she would continue working nights. However, the district court's decision letter reflects that the assumption was not the only or even a primary factor in its determination to award primary custody to Father. The district court's incorrect assumption is not sufficient to establish that it abused its discretion in awarding primary custody to Father.

### 5. *Visitation*

[¶ 36] Mother asserts the district court's visitation order is not sufficiently definite to promote understanding and compliance as required by § 20–2–202(a)(1) because

it ordered "visitation as proposed by [Father] in his closing argument" when Father's closing argument contained no visitation proposal and made no provision for holiday and summer visitation. Section 20–2–202 provides in relevant part:

§ 20–2–202. **Visitation.**

(a) The court may order visitation it deems in the best interests of each child and the court shall:

(i) Order visitation in enough detail to promote understanding and compliance;

[¶ 37] Father maintains the original divorce decree addressed holiday visitation and it remains in effect because it was never modified. Father points out that summer visitation was not addressed in the original decree or the modification order but neither party objected or proposed an alternative order. Father suggests the matter be remanded to the district court for determination of summer visitation.

[¶ 38] The parties are correct that the district court's order does not address holiday and summer visitation. In their presentations to the district court, both parties sought primary physical custody of the child with reasonable visitation by the other parent. More specifically, Mother proposed visitation for Father on alternating major holidays, including Thanksgiving, Christmas, spring break, and six weeks visitation in the summer. Father agreed that if he was awarded primary physical custody, Mother should have reasonable visitation on alternating major holidays and for six weeks in the summer. Given the parties' agreement concerning holiday and summer visitation, it is appropriate to remand these proceedings to the district court for entry of a revised order providing for visitation by Mother on alternating major holidays and for six weeks in the summer.

### 6. *Child Support*

[¶ 39] In her final issue, Mother claims the district court erred in ordering child support without adequate evidence of the parties' income. In support of her claim, she points to Wyo. Stat. Ann. § 20–2–308(a) (LexisNexis 2009), which states,

(a) No order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming Supreme Court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received.

Mother asserts she did not file a financial affidavit nor did she testify concerning her income. Therefore, she claims, the district court abused its discretion when it ordered her to pay child support in the amount specified in the order.

[¶ 40] Wyo. Stat. Ann. § 20–2–307(d) (LexisNexis 2009) authorizes the parties in a divorce proceeding to submit child support agreements to the district court for approval. In their property settlement and child custody agreement Mother and Father stipulated to the following:

5. *Child Support.* [Mother's] net monthly income shall be imputed, since she is a student, at $1,025.00. [Father's] net monthly income is $3,110.36. [Mother's] support obligation during [Father's] custody is $107.00. [Father's] support obligation during [Mother's] custody is $325.00, resulting in a support obligation of $218.00 per month. The parties agree to deviate from this amount due to the time each spends with the child and the contributions each party makes to the minor child's expenses, including clothing and activities.

The divorce decree incorporated the parties' agreement almost verbatim except that it clarified the parties had agreed to deviate from the presumptive amount, "to a zero support obligation" and added that Father would provide health insurance for the child.

[¶ 41] Later, in seeking an order modifying the decree to award primary physical custody of the child to her, Mother also sought an order establishing child support. In her opening statement at the hearing, counsel for Mother proposed that child support be calculated on the basis of the income figures incorporated into the divorce decree. Had the district court calculated Mother's child support obligation on the basis of the figures the parties stipulated to earlier—figures the court had approved and incorporated into the decree just two months before—it would not have been an abuse of discretion.

[¶ 42] However, for reasons that do not appear in the record, rather than calculating child support using the $1,025.00 net monthly income imputed to Mother in the divorce decree as Mother proposed, the district court imputed a net monthly income of $1,160.53 to Mother. Combining that amount with Father's monthly net income of $3,110.36, the same figure used in the divorce decree, the district court arrived at a joint presumptive child support obligation of $880.00 per month. Concluding that Mother was responsible for 27% of that amount, the district court calculated her child support obligation as $239.00 per month. Again for reasons that do not appear in the record, the district court then ordered Mother to pay child support of $279.00 per month, $40.00 more than it calculated her obligation to be in the preceding paragraph of the order. There is no evidence in the record supporting the $1,160.53 income imputed to Mother nor is there any explanation for the order requiring her to pay $279.00 per month, as opposed to the earlier calculation of $239.00 per month. On remand, the district court will need to recalculate Mother's child support obligation based upon the parties' respective incomes as incorporated in the divorce decree, or request the parties to submit financial affidavits as provided in § 20–2–308.

[¶ 43] The district court's modification order awarding primary physical custody to Father is affirmed. The case is remanded to the district court for a revised order setting out holiday and summer visitation and calculating child support.