KAUTZ, Justice.
[¶1] Appellant, Zane S. Johnson (Father), appeals the district court's order modifying the child custody, visitation and support order entered when Father and Appellee, Jami J. Clifford (Mother), divorced. Father argues the district court erroneously determined a material change in circumstances affecting the parties' children occurred since the original divorce decree. He claims the court's order changing custody does not serve the children's best interests. Father also asserts the district court erred when it denied his motion to require that Mother and the children be examined by a psychologist of Father's choosing. We affirm.
ISSUES
[¶2] Father raises the following issues on appeal:
I. Whether the trial court erred in finding a substantial and material change of circumstances to justify a modification of the court's prior decree.
II. Whether the trial court erred in finding [a] substantial and material change of circumstances which affect[s] the welfare of the parties' children to justify and [sic] change in custody.
III. Whether the trial court erred in changing custody because it did not serve the children's best interests.
IV. Whether the trial court erred in denying Father's Motions for Orders to Examine Persons.
FACTS
[¶3] Father and Mother were married in 1997. Three children were born during the marriage: CEJ, born in 1999; MRJ, born in 2001; and SDJ, born in 2005. In 2008, the Sixth Judicial District Court in Weston County granted Father and Mother a divorce. The divorce decree was the result of a settlement agreement between the parties regarding property, child custody, and child support. The decree granted the parents joint legal custody of the children, vested primary residential custody of the children with Mother and granted Father reasonable and liberal visitation. The decree ordered that the children would visit Father every Wednesday from 5:00 p.m. until Thursday at 8 a.m., and every other Thursday afternoon through Monday morning. Father also was granted visitation for six weeks during the summer and every other holiday. The visitation schedule resulted in Father having the children 48% of the time. The parties agree this arrangement amounted to joint physical custody. Mother remarried in 2010 and relocated to Buffalo, Wyoming. In order to continue the joint custody arrangement, Father quit his job in Newcastle and moved into a home close to Mother's home in Buffalo.
[¶4] In 2016, Mother filed a petition for modification of the custody and visitation order. She alleged several material changes in circumstances to justify modifying the custody order, including: the parties and the *822 children had moved to Buffalo; CEJ is autistic/special needs and was preparing to graduate from high school; the parties could not agree on medical treatment decisions regarding MRJ; MRJ had become resistant to spending time with Father; MRJ had been cited for an alcohol offense; CEJ and SDJ experienced significant conflict during Father's custody periods; Father often left the children unsupervised in the mornings because he had to drive to Gillette for work; and all three children were receiving counseling for significant behavioral, emotional and mental health issues.
[¶5] Father opposed the petition and requested that Mother and the children be examined by a psychologist of Father's choosing. The district court denied Father's motion. Father renewed the motion after Mother designated one of the children's treating psychologists as an expert witness. The district court again denied Father's motion.
[¶6] On November 4, 2016, the district court held an evidentiary hearing on Mother's petition to modify custody. The court heard testimony from Mother, Father, Mother's husband, Mother's father, the children, and two psychologists. Mother argued that the testimony demonstrated several material changes of circumstance that made a joint custody arrangement no longer viable. Father argued Mother had failed to demonstrate a material change in circumstances that would warrant a change in custody. However, he further argued that if a change in custody was necessary, he should receive primary physical custody of the children.
[¶7] The district court issued its Order Modifying Custody and Visitation over six months later, on May 24, 2017.[1] The court determined Mother had demonstrated multiple substantial changes in circumstances that affected the children: Mother had remarried; the parties had communication issues that have impacted their ability to co-parent; the children were displaying behavioral issues due to the custody arrangement; and the joint custody arrangement had become untenable. The court also determined it would be in the best interests of the children to modify the custody arrangement. The court ordered that Mother have primary custody of the children, and awarded Father visitation every other weekend and holiday. The court also granted Father summer visitation beginning seven days after school is released until seven days before school begins. During that time, Mother is entitled to visitation every other weekend and an undesignated continuous 14-day period. Father filed a timely notice of appeal.
STANDARD OF REVIEW
[¶8] We review a district court's decision on a petition to modify child custody for an abuse of discretion, and we will not disturb the decision absent a procedural error or a clear abuse of discretion. Bishop v. Bishop , 2017 WY 130, ¶ 9, 404 P.3d 1170, 1173 (Wyo. 2017). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." Id . (quoting Gjertsen v. Haar , 2015 WY 56, ¶ 11, 347 P.3d 1117, 1122 (Wyo. 2015) ). A district court does not abuse its discretion if it could reasonably conclude as it did. Id . In determining whether the decision was reasonable, "[w]e consider the evidence in the light most favorable to the district court's decision, 'affording every favorable inference to the prevailing party and omitting from our consideration the conflicting evidence.' " Id . (quoting Durfee v. Durfee , 2009 WY 7, ¶ 6, 199 P.3d 1087, 1089 (Wyo. 2009) ). As previously recognized:
Deference must be given to the opportunity of the trial court to judge the credibility of the witnesses, and a reviewing court will not set aside the court's findings merely because it might have reached a different result. The trial judge is in the best position to assess the credibility of witnesses and weigh their testimony, and, *823 thus, this Court accords considerable deference to the trial judge's findings.
Drake v. McCulloh , 2002 WY 50, ¶ 18, 43 P.3d 578, 584 (Wyo. 2002).
[¶9] Similarly, "[d]istrict courts are vested with wide discretion on discovery matters[.]" McCulloh v. Drake , 2005 WY 18, ¶ 16, 105 P.3d 1091, 1095 (Wyo. 2005). Therefore, we will not reverse a court's decision on a discovery matter unless it is an abuse of discretion. See id ., ¶¶ 16-17, 105 P.3d at 1095 ; Inskeep v. Inskeep , 752 P.2d 434, 436 (Wyo. 1988).
DISCUSSION
Material Change in Circumstances
[¶10] Father argues the district court abused its discretion when it determined there had been a material change in circumstances justifying modification of the original custody order. Wyo. Stat. Ann. § 20-2-204 (LexisNexis 2017) contains the statutory requirements for the modification of custody and visitation orders:
(a) Either parent may petition to enforce or modify any court order regarding custody and visitation.
....
(c) A court having jurisdiction may modify an order concerning the care, custody and visitation of the children if there is a showing by either parent of a material change in circumstances since the entry of the order in question and that the modification would be in the best interests of the children pursuant to W.S. 20-2-201(a).
[¶11] We have explained that this statute requires the district courts to conduct a two-step inquiry when presented with a petition to modify custody:
The first step requires a showing that there has been "a material change in circumstances since the entry of the order in question." § 20-2-204(c). Because of the res judicata effect afforded custody orders, such a finding is a threshold requirement. Hertzler v. Hertzler , 908 P.2d 946, 949-50 (Wyo. 1995). The district court does not properly acquire jurisdiction to reopen an existing custody order until there has been a showing of "a substantial or material change of circumstances which outweigh society's interest in applying the doctrine of res judicata" to a custody order. Kreuter v. Kreuter , 728 P.2d 1129, 1130 (Wyo. 1986). In short, unless the district court finds a material change in circumstances, it cannot proceed to the second step-determining whether a modification would be in the best interests of the child.
Bishop , ¶ 11, 404 P.3d at 1173 (quoting Hanson v. Belveal , 2012 WY 98, ¶ 18, 280 P.3d 1186, 1193 (Wyo. 2012) ). The party seeking the modification has the burden of proving a material change in circumstances has occurred since entry of the governing order. In re TLJ , 2006 WY 28, ¶ 11, 129 P.3d 874, 877 (Wyo. 2006). Further, a change in circumstances will be material only if it affects the welfare of the children. Hanson , ¶ 34, 280 P.3d at 1197 ; Morris v. Morris , 2007 WY 174, ¶ 6, 170 P.3d 86, 89 (Wyo. 2007). "A district court's finding concerning a material change in circumstances is principally a factual determination to which we accord great deference." Hanson , ¶ 13, 280 P.3d at 1192 (quoting 170 P.3d at 89 ).
[¶12] We have, however, recognized that some of the justification for a stringent requirement of a material change of circumstances in a primary custody situation is not necessarily present when modification of a joint custody arrangement is sought. When one parent has primary custody, a change of custody raises a significant concern about relationship stability and security for the child. Gurney v. Gurney , 899 P.2d 52, 54 (Wyo. 1995). We recognized that a child is almost always harmed when he is taken from the parent who had been the primary nurturer. Id . That concern is of less importance when modifying a joint custody arrangement because one parent has not been designated as the child's primary nurturer. Id .
[¶13] Additionally, a joint custody arrangement differs from a primary custody arrangement in that the parents' ability to resolve the custodial details between themselves is paramount to the arrangement's success. Id . at 55. "There can be little question that joint custody requires sincere dedication on the part of each parent to safeguard *824 the security and stability vital to a child's best interest." Id . For this reason, a change of circumstances justifying re-opening the original custody order occurs when the parents are unable to cooperate and make the joint custody arrangement work.[2] Id . ; see also Hanson , ¶ 30, 280 P.3d at 1196-97 (both parents requesting that the district court modify custody order was significant, but a critical fact was the parties agreed the originally-ordered custody arrangement simply was not working ).
[¶14] In the instances where this Court has had the opportunity to consider a district court's decision to modify a joint custody arrangement, both parents agreed that the joint custody arrangement was not working and a modification was warranted. Gurney , 899 P.2d at 55 ; Roemmich v. Roemmich , 2010 WY 115, ¶¶ 12-13, 238 P.3d 89, 93 (Wyo. 2010) ; Dahlke v. Dahlke , 2015 WY 76, ¶ 12, 351 P.3d 937, 940 (Wyo. 2015). In those cases, this Court concluded that the parties' invitation to reopen the arrangement was adequate to demonstrate "a sufficient change in circumstances justifying the reopening of the [joint] custody order" and end the judicial inquiry into whether a material or substantial change of circumstances exists. Gurney , 899 P.2d at 56 ; Roemmich , ¶¶ 12-13, 238 P.3d at 93 ; Dahlke , ¶ 12, 351 P.3d at 940 ; see also Harshberger v. Harshberger , 2005 WY 99, ¶ 10, 117 P.3d 1244, 1249-50 (Wyo. 2005).
[¶15] Here, while Mother believed the joint custody arrangement in this case was not working, Father disagreed. Therefore, the district court was required to determine whether there was a material change in circumstances that would justify reopening the custody order. Consistent with our precedent on joint custody modifications, this material change can be based on facts that demonstrate the parents are unable to make the joint custody arrangement work. The district court relied on the following material changes of circumstances to reopen the custody order: (1) Mother has remarried;[3] (2) the parties have encountered communication issues that have impacted their ability to co-parent; (3) the children have begun displaying behavioral issues, in part as a result of the joint custody arrangement; and (4) the joint custody arrangement has become untenable.
[¶16] The record shows that the district court heard testimony from two loving parents who want to spend as much time as possible with their children. The children are all involved in various activities and do well academically. Father took significant steps to make the joint custody arrangement work for the children, even quitting his job and moving from Newcastle to Buffalo to be near the children after Mother remarried and relocated. The record also demonstrates that, despite exceptionally difficult communication between the parents (the parents communicated only by leaving voicemails for one another), Mother and Father have mostly managed to ensure that each parent was spending time with the children over the last eight years as mandated by the original custody order.
[¶17] However, in the last couple of years, the children have exhibited behavioral problems that were not previously present. CEJ and SDJ often fought violently with each other while at Father's home, but did not do *825 so at Mother's home for fear of Mother's discipline (although the fights have subsided since CEJ moved to Sheridan to attend college). CEJ was so distraught over one fight in 2016, that she told Mother that "maybe she should kill herself." MRJ found herself in trouble after taking alcohol she found at Father's home to school. She also intentionally cut her wrist with a staple after having an argument with Father. Further, she and Father would often fight, and she now refuses to spend any time at Father's home. SDJ, a sixth grader, has exhibited behavioral problems since pre-school and suffers from anxiety. Mother testified that due to the frequent exchanges between Mother's and Father's homes, SDJ has difficulty sleeping and will often sleep in a sleeping bag on the floor of Mother's bedroom. CEJ explained that the frequent transitioning between the two homes is a stressor, and SDJ testified that the current custody arrangement makes it "complicated" to figure out where she is supposed to go after school.
[¶18] Over the years, all three children have received counseling for these various issues. CEJ described her visits with her father as "unbearable" and the therapist believed that was based on the relationship with her father. MRJ's treatment notes reveal ongoing conflict between MRJ and Father. CEJ and MRJ each testified that Father speaks negatively about Mother to the children with regularity, and that is a point of stress for the children. Further, Father's expert testified that it appears Father is "stuck back with the fact that [Mother] betrayed her marriage vows and went off with another man," Father is still struggling with those feelings, and the children know that Father is hurt by the situation. CEJ and MRJ testified there was more structure at Mother's home than at Father's home. Dr. Faulkner, who treated the children, opined that the different parenting styles was a "source of difficulty for the children" and it is challenging for the children to adjust when they go back and forth between the two homes so often. Dr. Faulkner also noted during a family therapy session: "It was difficult for these parents to find any common ground in their decisions about parenting, and they had trouble not exchanging barbs with each other." This note was supported by testimony from both Mother and Father concerning their inability to come to an agreement about occasionally switching weekends, birthday parties, summer visitation, visits from grandparents, and what verbal communications the parents had resulted in arguments in front of the children. Further, Mother testified Father does not share information with her when the children are sick or missing school while at Father's home.
[¶19] Using our deferential standard of review, the facts presented at the hearing support the district court's conclusion that the joint custody arrangement was not working to the benefit of the children to a significant degree-it was untenable. While the parents have been able to communicate in such a way that the children spend time with each parent as mandated by the original custody order, it appears communication beyond that basic scheduling has become impossible. Mother and Father both acknowledge their communication through voicemail is not effective, but it appears neither parent is completely open to the idea of speaking to each other face to face or even over the telephone. This type of communication has not lead to a successful co-parenting environment that will allow the children to thrive in a joint custody situation. Furthermore, a positive co-parenting environment cannot exist when Father repeatedly makes negative comments about Mother. The facts show that this behavior has had a detrimental impact on the children, and despite the children's repeated requests for him to stop, Father continued to disparage Mother.
[¶20] Additionally, the facts demonstrate the original custody arrangement has led to stress and anxiety in the children. The children are unable to maintain any sense of comfort or consistency when they are required to move between Mother's and Father's homes two to three times a week. Not only are the children having to constantly adjust to a different home, they are also always adjusting to the differing parenting styles utilized by Mother and Father.
[¶21] Father argues that most of these facts are not new and, instead, have *826 existed during the duration of the custody arrangement. To some extent Father is correct, but some of these problems have grown over time. While a material change in circumstances must have occurred since the entry of the original custody order in a traditional primary custody arrangement, this Court has relaxed that standard when it comes to joint custody arrangements and instead simply requires a showing that the joint custody arrangement truly is not working. See In re TLJ , ¶ 11, 129 P.3d at 877 ; Gurney , 899 P.2d at 55. Further, the record suggests that, while communication may have never been perfect, it has deteriorated since the divorce. Mother and Father both testified about a mediation they attended to determine the best way to communicate with one another. Therefore, one of the most important facets of joint custody-the parents' ability to communicate and resolve issues between themselves-materially and detrimentally changed over time.
[¶22] We are keenly aware these facts could also lead to a reasonable conclusion that the children are simply going through natural changes in behavior and encountering normal relationship issues with their siblings and parents (especially Father), and a material change in circumstances is not present. We commend Mother and Father for trying to make the custody arrangement work for as long as they did. The district courts undertake the difficult task of determining what is best for children who, no matter how responsible and loving both parents may be, are detrimentally affected by divorce. Often times, the court's decisions are based upon very fine factual distinctions because both parents are good and loving parents. These nuances can only be appreciated by seeing the witnesses testify in person, which is why this Court must defer to the district court's decisions with respect to factual issues and credibility. This Court's review on appeal is limited to simply determining whether the district court's decision is reasonable based upon the facts presented when viewed in the light most favorable to the court's decision. Bishop , ¶ 9, 404 P.3d at 1173. Unless the district court's decision is unreasonable, this Court must defer to the decision. Id . This is the case even if the reviewing court would have made a different decision than the district court made in the first instance. Drake , ¶ 18, 43 P.3d at 584. Here, the facts support the district court's decision that the joint custody arrangement was not working and, therefore, a material change in circumstances existed to reopen the custody order.
Material Change of Circumstances and Their Effect on the Children
[¶23] Father argues the district court erred when it determined a material change in circumstance has occurred because there was no evidence presented that any of the changes the district court relied on had affected the children. Before a change can be considered material, the district court must determine that the change is relevant to the welfare of the children. Kappen v. Kappen , 2015 WY 3, ¶ 15, 341 P.3d 377, 382 (Wyo. 2015). The district court did not abuse its discretion when it determined the children were affected by the difficulties in communication and the frequent changes between homes encountered in the custody arrangement. As explained above, CEJ and MRJ testified about their anxiety caused by Father's statements about Mother. The notes from the children's therapy sessions are replete with concerns about the statements Father makes about Mother. CEJ and SDJ testified that the frequent changes between homes is a stressor and is confusing, and MRJ's conflicts with Father have resulted in MRJ not spending any time in Father's home. The frequent changes have also made it difficult for SDJ to sleep. These facts clearly support the district court's conclusion that the difficulties encountered in the custody arrangement is relevant to the welfare of the children.
Children's Best Interests
[¶24] After finding a material change in circumstances, the district court must determine whether modification of the decree will be in the best interests of the children. See Jensen v. Milatzo-Jensen , 2013 WY 27, ¶ 8, 297 P.3d 768, 772 (Wyo. 2013) ; Section 20-2-204(c). Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2017) states in relevant part:
*827 In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
(i) The quality of the relationship each child has with each parent;
(ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
(iii) The relative competency and fitness of each parent;
(iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
(v) How the parents and each child can best maintain and strengthen a relationship with each other;
(vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
(vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
(viii) Geographic distance between the parents' residences;
(ix) The current physical and mental ability of each parent to care for each child;
(x) Any other factors the court deems necessary and relevant.
[¶25] The district court evaluated the factors from § 20-2-201. It concluded that both parents have good relationships with the children, have the ability to provide for the children during their periods of responsibility, are fit and competent to care for the children, have demonstrated a willingness to accept care for the children at specified times, and have realized the best way to maintain and strengthen relationships with the children is to spend time with them. The court found both parents effectively communicate with each child. The court also recognized that, although the parents have experienced a reduced ability to communicate with one another, the parents have been able to exercise their respective parenting time without interference. However, the court concluded that much of the strife in the children's lives is a result of the joint custody arrangement and a more traditional custodial arrangement would benefit the children and the parents. The district court properly considered the factors set out in § 20-2-201 in concluding it was in the children's best interests to modify the custody arrangement.
[¶26] Father claims the district court's decision to modify custody because it is in the best interests of the children is inconsistent with its findings that Father is a fit parent capable of taking care of his children, that he has a positive relationship with the children, and that spending more time with the children will maintain that relationship. Father argues this is further bolstered by the fact that the district court's only basis in granting custody to Mother is that she has been the primary caretaker. This Court does not disagree that the evidence shows Father is a good parent who loves his children and is an active participant in their lives. However, Mother and Father divorced and the district court must determine what custody arrangement is in the best interests of the children. That decision is not a testimonial to which parent is the better parent; nor is it an attempt to reward or punish the parents. See In re Marriage of Zabecki , 389 N.W.2d 396, 398 (Iowa 1986).
[¶27] This Court agrees that the district court's perfunctory finding that Mother has been the primary caregiver is troubling given Father has cared for the children nearly as much as Mother. However, the record clearly supports a finding that awarding primary custody to Mother and visitation to Father is in the best interests of the children. CEJ and MRJ testified there is more structure at Mother's home, and CEJ and SDJ testified they fight less at Mother's home due to her stricter rules. MRJ testified extensively about the difficulties in her relationship with her Father, and she expressed a desire to see her Father "just not as much as before." Mother and Father both leave very early in the morning to get to their out of town jobs, but Mother's husband is home in the mornings *828 and can assist and tend to the children before school starts. All of these facts support a conclusion that an order granting primary custody to Mother with visitation to Father is in the best interests of the children.
Motions for Examination Under W.R.C.P. 35
[¶28] Father filed a motion under Wyoming Rule of Civil Procedure 35 requesting the district court order that Mother and the children undergo psychological examinations with Dr. Ann Duncan. That rule states in relevant part:
(a) Order for an Examination. -
(1) In General .-The court where the action is pending may order a party whose mental or physical condition-including blood group-is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
(2) Motion and Notice; Contents of the Order .-The order:
(A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
(B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.
W.R.C.P. 35.
[¶29] Father argued the examinations were necessary for Father to defend against Mother's allegations that the custody arrangement was causing behavioral issues in the children and that the environment in Father's home was causing conflict between the children. Mother objected to the motion on the basis that Father had failed to demonstrate good cause for the evaluations because the children were already being treated by a therapist. After an apparently unreported hearing on the matter, the district court denied Father's motion.
[¶30] After Mother filed her expert witness designation, Father filed another motion requesting that the parties and children be examined by Dr. Duncan. Father's argument was substantially the same as in the first motion, but he argued the examination was even more necessary now that Mother intended to call her own expert witnesses that have "examined, observed and tested" the children. Mother objected, asserting Father's motion did not allege any new information that would show good cause as to why the motion should be granted. Father replied and argued an evaluation by Dr. Duncan is the only way he can defend himself against Mother's allegations, as Mother chose and provided the information to the counselors who have treated the children thus far. Without a hearing, the district court denied Father's motion on the basis it did not contain any new information as to why an examination of the parties or the children is necessary.
[¶31] Father argues the district court abused its discretion when it denied his motions. As in his motions, Father states Dr. Duncan should have examined the children because their mental states were at issue in the matter before the court. This Court has not had the occasion to consider what a party must demonstrate before a trial court should grant the party's request for an examination under W.R.C.P. 35. However, Wyoming's rule is identical to F.R.C.P. 35 and, therefore, we look to federal law for guidance. Graus v. OK Investments, Inc. , 2014 WY 166, ¶ 14, 342 P.3d 365, 369 (Wyo. 2014).
[¶32] In Schlagenhauf v. Holder , 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the United States Supreme Court discussed a movant's burden when requesting an examination under F.R.C.P. 35. The Court explained the rule requires the movant to demonstrate that "each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." Id . at 118, 85 S.Ct. 234. "Good cause" is more than simply showing the evidence is relevant or by citing to "mere conclusory allegations of the pleadings," and what constitutes good cause will vary on a case by case basis. Id . at 118-19, 85 S.Ct. 234. In conducting the required "discriminating application" of Rule 35, a trial *829 court may determine an evidentiary hearing is necessary in some circumstances, while in others good cause may be determined by methods short of a hearing, such as an affidavit. Id . at 119, 85 S.Ct. 234. In other circumstances, good cause may exist by virtue of the allegations and defenses in the pleadings. Id . Further, the ability of the movant to obtain the information sought in the examination from other means is a consideration in the analysis. Id . at 118, 85 S.Ct. 234.
[¶33] Here, Father sought psychological examinations of himself, Mother, and the children because Mother placed the children's psychological well-being at issue in the petition to modify the custody order. Mother countered that request with the argument that the children were already in counseling and Father could get the information he needed from those providers. The court held a hearing on the matter; however, the transcript of the hearing is not contained in the record. The Wyoming Rules of Appellate Procedure places the burden on the appellant-in this case Father-to provide a complete record on which we are to base a decision. Golden v. Guion , 2013 WY 45, ¶ 5, 299 P.3d 95, 96 (Wyo. 2013) ; W.R.A.P. 3.02(b). We have recognized that "failure to provide a transcript of evidence does not necessarily require a dismissal of an appeal," but "our review is restricted to the allegations of error that do not require a review of the evidence presented before the district court that has been memorialized in the transcript." Golden , ¶ 6, 299 P.3d at 97. To the extent our review requires a transcript that has not been provided, we must assume that the evidence supported the district court's findings. Id . ; Waterbury v. Waterbury , 2017 WY 11, ¶ 14, 388 P.3d 532, 536 (Wyo. 2017).
[¶34] Father does not claim facts were presented at the hearing that would have supported granting the motions; in fact, Father does not mention anywhere in his brief that the district court held a hearing on the matter. Based on the motion alone, we cannot find the district court abused its discretion in denying Father's motion. While the motion argues Mother has placed the children's psychological well-being in question, the motion does not sufficiently demonstrate good cause in that it does not establish the necessary information could not be obtained from other sources. This fact alone may have been the reason the district court decided a hearing on the matter was needed. Because a transcript of the hearing was not included in the record, we cannot consider any factual developments that may have occurred at that hearing. Thus, we must assume any facts or evidence provided at the hearing support the district court's decision to deny Father's request. Waterbury , ¶ 14, 388 P.3d at 536.
CONCLUSION
[¶35] The district court did not abuse its discretion when it determined a material change of circumstances that was relevant to the welfare of the children warranted a modification to the joint custody order. Further, the district court appropriately determined that granting Mother primary custody of the children and awarding Father visitation was in the best interests of the children. Finally, the district court did not abuse its discretion when it denied Father's request under W.R.C.P. 35 for Mother and the children to undergo a psychological examination.
[¶36] Affirmed.

By the time the district court entered the order, CEJ had turned eighteen years old and is no longer subject to the custody order.

This Court recently overruled its precedent that recognized a presumption against the imposition of joint or shared custody. Bruegman v. Bruegman , 2018 WY 49, ¶ 16, 417 P.3d 157, 163-64 (Wyo. 2018). Bruegman , however, did not involve a modification to custody and, therefore, the Court did not conduct an analysis regarding a material change in circumstances. While primary custody and joint custody are now equally favored, the differences this Court historically recognized between the two still exist. Therefore, we will continue to apply the appropriate measure of a material change of circumstances depending on whether the governing order awarded primary custody or joint or shared custody.

While the record certainly supports the district court's finding that Mother has remarried, we find that factor of no consequence in the analysis. Mother remarried in 2010, thus this fact has been present during the vast majority of the joint custody arrangement. Further, the fact that she remarried seems to have had no impact on the joint custody arrangement. When Mother moved from Newcastle to Buffalo with her new husband, Father also moved to Buffalo to maintain the custody arrangement with the children. Additionally, remarriage on its own is insufficient to constitute a material change in circumstances sufficient to justify a change in custody. Kreuter v. Kreuter , 728 P.2d 1129, 1130 (Wyo. 1986).